RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Proposed Counsel for the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
In re:                                              :    Chapter 11
                                                    :
PACHANGA, INC., *et al.*,[1]                        :    Case No.: 18-12767 (MEW)
                                                    :    (Jointly Administered)
                          Debtors.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ENTRY OF (I) AN ORDER APPROVING (a) BIDDING
PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS, (b) PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (c) FORM AND MANNER
OF NOTICE OF SALE HEARING; AND (II) AN ORDER APPROVING (a) SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS OUTSIDE ORDINARY COURSE
OF BUSINESS, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND
ENCUMBRANCES, (b) FORM AND CONTENT OF ASSET PURCHASE AGREEMENT,
AND (c) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

Pachanga, Inc. and its affiliated debtors and debtors in possession (collectively, the

"Debtors"), the debtors and debtors in possession herein, by their proposed counsel, Rubin LLC,

in support of their motion (the "Motion") pursuant to sections 105(a), 363, and 365 of title 11 of

the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, and 6006 of the Federal

---

[1] The Debtors in these chapter 11 cases are: Pachanga, Inc.; Corossol FIKA Tower LLC; Corossol LLC; Corossol
Tribeca LLC; FIKA 41 W 58th Street LLC; FIKA 66 Pearl Street LLC; FIKA 141 W 41st Street LLC; FIKA 157
7th Avenue; FIKA 824 10th Ave LLC; FIKA Catering LLC; FIKA Espresso Bars LLC; FIKA Tribeca LLC; FIKA
Web Orders LLC; and MILA Solutions LLC.  The Debtors corporate headquarters and mailing address is 824 10th
Avenue, New York, NY 10019.

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Bankruptcy Rules 2002-1, 6004-1, and 9006-1(b), and the Sale Guidelines for the Conduct of Asset Sales, General Order M-383 (the "Sale Guidelines") for entry of (I) an order approving (a) bidding procedures in connection with the sale of substantially all of the Debtors' assets, (b) procedures for assumption and assignment of executory contracts, and (c) the form and manner of notice of the hearing to approve the sale (the "Bidding Procedures Order"); and (II) an order approving the sale of substantially all of the Debtors' assets (the "Sale Order"), respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## INTRODUCTION AND OVERVIEW OF RELIEF SOUGHT

2.      On September 14, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court, and orders for relief under section 301 of the Bankruptcy Code were entered in these cases (the "Chapter 11 Cases").

3.      The Debtors have been authorized to remain in possession of their property and to continue in the operation and management of their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.      No official committee of unsecured creditors has yet been appointed by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") in the Chapter 11 Cases.

5.      On September 14, 2018, the Court entered orders providing for the joint administration of the Chapter 11 Cases.

6.      Shortly to be annexed hereto as **Exhibit A** is an *Asset Purchase Agreement* (the "APA") between the Debtors and FIKA Acquisitions, LLC (the "Stalking Horse Bidder"), as the stalking horse bidder, for the sale of substantially all of the Debtors' assets as set forth in the APA (the "Assets").  The Debtors and the Stalking Horse Bidder are finalizing the terms of the APA and contemplate executing the APA shortly.  References to the terms of the APA herein are based upon provisions negotiated between the parties that are agreed to in principle, and which the parties do not anticipate will be modified in the executed APA.  Notably, the Stalking Horse Bidder is not requesting any stalking horse protections and the Debtors do not seek such relief in this Motion.

7.      Pursuant to the APA with the Stalking Horse Bidder, or a similar agreement with a bidder who later submits a higher and better offer pursuant to the Bidding Procedures described below, the Debtors intend to sell and assign the Assets, free and clear of all liens, claims, interests, and encumbrances, by Court-approved sale (the "Sale").

8.      In order to effectuate the Sale, the Debtors seek Court approval of the Bidding Procedures Order in the form annexed hereto as **Exhibit B**, granting the following relief:

   a.      authorizing and approving the bidding procedures to the extent there is competitive bidding in connection with the Sale, substantially in the form annexed hereto as **Exhibit 1** to **Exhibit B** (the "Bidding Procedures");

   b.      authorizing and approving the assumption and assignment of certain executory contracts and unexpired leases of the Debtors in accordance with the terms of the APA, and approving the form and manner of the initial notice of the potential assumption and assignment of the Assigned Contracts (defined below), substantially in the form annexed hereto as **Exhibit 2** to **Exhibit B** (the "Assumption and Assignment Notice");

   c.      approving the form and manner of the notice of, and hearing to approve, the Sale, substantially in the form annexed hereto as **Exhibit 3** to **Exhibit B** (the "Sale Notice");

d.    approving the following proposed dates and deadlines (subject to change as necessary) relating to receipt of competitive bids (if any), and approval of the Sale:

    i.    Objections to the Sale and entry of the Sale Order are due on November 9, 2018 (the "Sale Objection Deadline");

    ii.    Potential bidders that have been informed they are acceptable bidders must submit bids by no later than November 13, 2018 (the "Bid Deadline");

    iii.    If qualifying bids are submitted by the Bid Deadline, then the auction in connection with the Sale shall take place on November 14, 2018, commencing at 10:00 a.m. (EST) at the offices of Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, NY 10001 (the "Auction");

    iv.    The hearing on approval of the Sale Orders shall take place on November 16, 2018 (the "Sale Hearing").

9.    Upon completion of the Auction (if necessary), the Debtors seek Court approval of the Sale and the Sale Order, granting the following relief:[2]

a.    authorizing and approving the Debtors' Sale of the Assets to the Successful Bidder, free and clear of all liens, claims, interests, and encumbrances;

b.    authorizing and approving the Debtors' entry into, and performance under, the APA (or similar agreement with a Successful Bidder to the extent that it complies with the Bidding Procedures);

c.    authorizing and approving the assumption and assignment of the Assigned Contracts (defined below) pursuant to the APA;

d.    determining that the Successful Bidder is a good faith purchaser and assignee pursuant to section 363(m) of the Bankruptcy Code, and

e.    waiving the fourteen (14) day stay set forth in Bankruptcy Rule 6004(h) and 6006(d).

---

[2] This is a summary of portions of the relief being provided by the Sale Order.  To the extent there are any inconsistencies between this summary and the Sale Order, the terms and the conditions of the Sale Order shall control.

## BACKGROUND

10.    The Debtors, doing business under the trade name FIKA, are owner/operators of specialty espresso bars and restaurants in New York City, as well as an award-winning chocolate operation.  The Debtors currently operate espresso bars at six locations, a bakery and kitchen on 10th Avenue, a chocolate factory in Tribeca, and conduct catering and e-commerce businesses as well.

11.    Additional information about the Debtors' business and the events leading up to the Petition Date can be found in the Affidavit of Lars Akerlund Pursuant to Local Bankruptcy Rule 1007-2 and in Support of First Day Motions and Applications (the "1007 Affidavit") filed on the Petition Date, and incorporated herein by reference.

12.    By this Motion, the Debtors seek authorization to sell the Assets at an auction pursuant to bidding procedures approved by the Court.

13.    The Debtors will also be filing a motion to approve the retention of SSG Advisors, LLC ("SSG").  In order to effectuate the sale and to conduct the marketing, bidding and auction process, the Debtors engaged SSG, a leading investment banking firm that specializes in middle-market distressed transactions, prior to the Petition Date to act as investment banker.  Beginning the week of September 16, 2018, SSG developed a buyers list, prepared marketing materials, created a diligence package, and began the process of notifying potential buyers of the sale opportunity by approaching potential strategic as well as financial buyers.

14.    Furthermore, because certain members of FIKA Acquisitions are insiders of the Debtors, the Debtors appointed Eddy Friedfeld, as independent director (the "Independent Director"), to determine (i) whether a sale of substantially all of the assets of the Debtors is in the best interest of the Debtors, (ii) whether any bidding procedures governing the sale is reasonable

and tailored to generate the highest and best offers at an auction, and (iii) in the event an auction is held in connection with the sale, the highest and best offer submitted.  Mr. Friedfeld has extensive experience serving as chief restructuring officer, chief liquidation officer, and chief operating officer for distressed companies in various industries.  Previously, he worked as a corporate attorney in large New York law firms.

15.     Prior to engaging SSG, the Debtors had already marketed their assets for over a year.  Beginning in August 2017, FIKA engaged a financial advisor to obtain investment capital. The advisor marketed the investment opportunity extensively, made a number of presentations to potential investors, and fielded due diligence inquiries from several interested parties.  Only one buyer agreed to a transaction for the Debtors' assets, and FIKA Acquisitions was created to acquire the Assets pursuant to the APA.

16.     Despite marketing the Assets for nearly a year, the Debtors were unable to obtain funding.  Instead, the Debtors have accepted the APA as the stalking horse bid for the Assets. The stalking horse bid set forth in the APA is also subject to higher and better offers, and does not include a request for a break-up fee.

## OVERVIEW OF PROPOSED SALE

17.     The material terms of the parties' agreement in principle, to be formally documented in the APA, are summarized as follows:[3]

| Subject Matter | APA Section | Description |
|---|---|---|
| Purchase Price | 2.05 | In consideration for the Purchased Assets, Buyer shall (i) Credit Bid up to the full amount of its secured claims, and (ii) pay to Seller a cash component. |
| Purchased Assets | 2.01 | All of the assets, properties and rights of Seller set forth on Section 2.01 of the |

---

[3] This is a summary of the APAs.  To the extent there are any inconsistencies between this summary the APA, the terms and the conditions of the APA shall control.

| | | Disclosure Schedules; all Assigned Contracts; all prepaid expenses, credits, advance payments, security, deposits, charges, sums and fees to the extent related to any Purchased Assets; all of Seller's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Purchased Assets; all claims, rights and causes of action of Seller arising under Sections 547 and 550 of the Bankruptcy Code against the individuals or entities that Buyer anticipates maintaining as vendors and suppliers, as set forth on Section 2.01(e) of the Disclosure Schedules; originals, or where not available, copies, of all books and records, including books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records and data (including all correspondence with any Governmental Authority), sales material and records, strategic plans, internal financial statements and marketing and promotional surveys, material and research, that exclusively relate to the Purchased Assets, other than books and records set forth in Section 2.01(e) of the Disclosure Schedules (“**Books and Records**”); provided that Seller shall be permitted to retain copies of all Books and Records; and all goodwill associated with any of the Purchased Assets. |
|---|---|---|
| Assumed Liabilities | 2.03 | All of Seller's secured liabilities and obligations to the Small Business Administration; all liabilities and obligations arising under or relating to the Assigned Contracts; including, without limitation, all Cure Amounts; all liabilities and obligations of Seller for pre-petition sales taxes owed to the New York State Department of Taxation and Finance to the extent same are entitled to priority treatment under section 507(a) of the |

| | | Bankruptcy Code; all liabilities and obligations for (i) Taxes relating to the Purchased Assets or the Assumed Liabilities for any taxable period ending after the Closing Date and (ii) Taxes for which Buyer is liable pursuant to Section 6.12; all other liabilities and obligations arising out of or relating to Buyer's ownership of the Purchased Assets on or after the Closing; and all liabilities and obligations of Seller set forth on Section 2.03(f) of the Disclosure Schedules. |
|---|---|---|
| Excluded Assets | 2.02 | Other than the Purchased Assets, Buyer expressly understands and agrees that it is not purchasing or acquiring, and Seller is not selling or assigning, any other assets or properties of Seller or its Subsidiaries, and all such other assets and properties shall be excluded from the Purchased Assets (the "**Excluded Assets**").    Excluded Assets include the following assets and properties of Seller: all assets, properties and rights used by Seller in its businesses other than the Purchased Assets; all Contracts, other than Assigned Contracts; other than the Purchased Assets described in Section 2.01(d) above, all rights to any action, suit or claim of any nature that Seller or Seller's bankruptcy estate may hold, whether arising by way of counterclaim or otherwise, including, without limitation, all claims, rights and causes of action of Seller arising under or relating to Chapter 5 of the Bankruptcy Code (whether or not asserted as of the Closing Date), including, without limitation, any such claims and actions arising under Sections 544, 545, 547, 548, 549 or 551 of the Bankruptcy Code; all cash and cash equivalents bank accounts and securities of Seller; the assets, properties and rights specifically set forth on Section 2.02(e) of the Disclosure Schedules; and the rights which accrue or will accrue to Seller under the Transaction Documents. |
| Excluded Liabilities | 2.04 | Except with respect to the Assumed Liabilities, Buyer shall not assume and shall |

| | | |
|---|---|---|
| | | not be responsible to pay, perform or discharge any of the following liabilities or obligations of Seller (collectively, the "**Excluded Liabilities**"): any liabilities or obligations arising out of or relating to Seller's ownership of the Purchased Assets prior to the Closing Date; any liabilities or obligations relating to or arising out of the Excluded Assets; any liabilities or obligations for (i) Taxes relating to the Purchased Assets or the Assumed Liabilities for any taxable period ending on or prior to the Closing Date and (ii) any other Taxes of Seller (other than Taxes allocated to Buyer under Section 6.12) for any taxable period; and any liabilities or obligations of Seller arising or incurred in connection with the negotiation, preparation, investigation and performance of this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby, including, without limitation, fees and expenses of counsel, accountants, consultants, advisers and others. |
| Closing | Article III | Second Business Day after all closing conditions under Article VII are satisfied or waived, or at such other time, date or place as Seller and Buyer may mutually agree in writing. |

## **EXTRAORDINARY PROVISIONS UNDER SALE GUIDELINES**

18.    The APA and this Motion contain the following "extraordinary provisions" as set forth in Section I.D. of the Sale Guidelines:

a.    <u>Sale to Insider</u>:  The Stalking Horse Bidder is an insider of the Debtors. Apfel Holdings LLC ("<u>Apfel</u>"), the Debtors' largest pre-petition secured lender, held secured claims against the Debtors in the aggregate amount of $11,115,604 (the "<u>Apfel Secured Claims</u>").  Apfel assigned the Apfel Secured Claims to the Stalking Horse Bidder pursuant to an Assignment and Assumption Agreement dated July 31, 2018.  Apfel holds a 30.21% membership interest in the Stalking Horse Bidder.  Lena Khoury, the Director of Sale and Marketing for the Debtors and the wife of the founder and CEO of the Debtors, holds a 30.33% membership interest in the Stalking Horse Bidder.

As set forth above, the Debtors have taken measures to ensure the fairness of the sale process and the proposed transaction. The Debtors have appointed the Independent Director to oversee the sale process, make all determinations regarding whether the proposed Bidding Procedures are reasonable and tailored to generate the highest and best offers at an auction, and in the event an auction is held in connection with the sale, identify the highest and best offer submitted. In addition, the Debtors have retained SSG, a reputable firm with extensive experience in bankruptcy asset sales, to conduct an independent sale process and to market the Assets and solicit bidders. Lastly, the sale process will be transparent and open and all interested parties will have an opportunity to bid for the Assets.

b.      Agreements with Management:  The Stalking Horse Bidder contemplates executing employment agreements with Lars Akerlund (the Debtors' founder and CEO) and Lena Khoury.

c.      Record Retention:  The proposed sale is for substantially all of the assets of the Debtors; however, the APA and this Motion confirm that the Debtors will retain, or have reasonable access to, their books and record to enable them to administer the Chapter 11 Cases.

d.      Sale of Avoidance Actions.  The proposed sale includes a sale of certain avoidance claims under chapter 5 of the Bankruptcy Code, which the Motion discloses. The avoidance claims being purchased are those relating to vendors and suppliers with whom the Stalking Horse Bidder intends to continue to do business.

e.      Requested Findings as to Successor Liability.  The Debtors request that the Sale Order contain findings and a ruling that the Stalking Horse Bidder shall not be deemed to (i) be a successor or successor employer to any of the Debtors or any of their estates under any theory of law or equity; (ii) have, *de facto* or otherwise, merged or consolidated with or into any of the Debtors or the Debtors' estates; (iii) be a mere continuation or substantial continuation of any of the Debtors or any enterprise of the Debtors; or (iv) be liable for any acts or omissions of the Debtors in the conduct of the Debtors' business or arising under or related to the assets being purchased. The Motion discloses the proposed notice of this requested relief, and the proposed Sale Notice contains language describing the Debtors' intention to limit successor liability. The Stalking Horse Bidder has advised the Debtors that such findings are a material inducement for it to enter into any agreement to purchase the Debtors' assets, and it would not agree to purchase those assets absent an order of the Court with such findings.

f.      Relief from Bankruptcy Rule 6004(h).  The Debtors seek relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h).  The Motion discloses the basis for such a request.

## OVERVIEW OF ASSUMPTION PROCEDURES

19.    The Debtors also seek approval of the assumption of certain contracts, leases and agreements in accordance with the procedures set forth herein (the "Assumption Procedures").

20.    As soon as practicable following the entry of the Bidding Procedures Order, the Debtors shall serve each counterparty with a notice substantially in the form attached as **Exhibit 2** to the Bidding Procedures Order (the "Assumption and Assignment Notice"), by first class mail on all non-debtor counterparties to executory contracts or unexpired leases.    The Assumption and Assignment Notice will identify the Stalking Horse Bidder, and inform each recipient that the Debtors have agreed to sell the Assets to the Stalking Horse Bidder pursuant to the APA, and that, as part of the Sale, the counterparty's respective executory contract or lease may be either (i) assumed and assigned or (ii) rejected.

21.    The Assumption and Assignment Notice will also include (x) any "cure" amounts required to be paid pursuant to section 365 of the Bankruptcy Code or the APA (the "Cure Amounts") that will apply in the event that the applicable executory contract or lease is to be an Assigned Contract, and (y) any applicable objection deadlines that may be established pursuant to the Bidding Procedures Order.

22.    Objections (each a "Contract Objection"), if any, to the assumption and assignment of any executory contract or lease, the adequate assurance of future performance of such executory contract or lease, and the Debtors' proposed Cure Amounts must: (a) be in writing; (b) state with specificity the nature of such objection and alleged cure amount, including applicable and appropriate documentation in support of such alleged cure amount; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Court, on or before

November 9, 2018 at 4:00 p.m. prevailing Eastern Time (the "Contract Objection Deadline"); and (e) be served, so as to be actually received on or before the Contract Objection Deadline, by (i) counsel for the Debtors; (ii) counsel to the Stalking Horse Bidder; (iii) counsel to the any creditors' committee (if one is appointed); and (iv) the Office of the U.S. Trustee; *provided*, *however*, that if the Auction results in a Successful Bidder other than the Stalking Horse Bidder, as part of the notice provided by the Debtors, the Debtors will identify such Successful Bidder in a notice and file it with the Court and serve it on each counterparty who was served with the Assumption and Assignment Notice, and the deadline for objecting to the assignment of the Assigned Contracts to such Successful Bidder solely on the basis of adequate assurance of future performance will be at the commencement of the Sale Hearing.

23.    If a counterparty timely and properly files a Contract Objection, then, as set forth in Assumption and Assignment Notice, such counterparty shall have the opportunity to appear before the Court at the Sale Hearing.  In order for the Debtors to assume and assign any of the executory contracts or leases, the proposed Cure Amount determined by the Court (if there is a Contract Objection) or set forth in the Assumption and Assignment Notice (if there is no Contract Objection) must be paid to the counterparty to the executory contract or lease upon the assumption and assignment of such executory contract or lease.

24.    If a Contract Objection is not timely and properly filed and served in accordance with the Bidding Procedures Order, (a) the counterparty shall be deemed to consent to the assumption and assignment of the executory contract or lease, (b) the Debtors' proposed Cure Amount shall be controlling with respect to the executory contract or lease notwithstanding anything to the contrary in any executory contract or lease or any other document, (c) such executory contract or lease may be assigned to the Stalking Horse Bidder or, if applicable, the

Successful Bidder, (d) the failure to object shall be deemed consent by the counterparty to the assumption and assignment for the purposes of section 365(c) of the Bankruptcy Code or otherwise, (e) the counterparty to the executory contract or lease shall be forever barred from asserting any other claim arising prior to the assignment, if applicable, against the Debtors, the Stalking Horse Bidder or, if applicable, the Successful Bidder as to such executory contract or lease, and (f) with respect to the executory contract or lease, the Stalking Horse Bidder or, if applicable, the Successful Bidder's promise to perform under the executory contract or lease shall be deemed adequate assurance of future performance under the executory contract or lease.

25.    No later than two days prior to the Sale Hearing, the Stalking Horse Bidder (or, if the Stalking Horse Bidder is not the Successful Bidder, the Successful Bidder) may designate, by written notice to the Debtors, which of the executory contracts or leases are to be treated as rejected contracts (the "Rejected Contracts"), and by written notice to the Debtors, which of the executory contracts or leases are to be treated as assigned contracts (the "Assigned Contracts"). Additionally, by the later of (i) the Closing Date (as defined in the APA), and (ii) the date of entry of a final order of the Court resolving any Contract Objection (as defined below), the Stalking Horse Bidder or, as applicable, the Successful Bidder, may designate any executory contract or lease for exclusion from the list of Assigned Contracts by delivering written notice to the Debtors, and such executory contract or lease shall be deemed a Rejected Contract under the Bidding Procedures Order, and the Debtors will be deemed by the Motion to have moved to reject any such Rejected Contract as of the Closing Date (and the Closing Date shall constitute the rejection effective date with respect thereto) unless such executory contract or lease had been rejected pursuant to prior order of court.

26.     No later than one day prior to the Sale Hearing, the Debtors will file and serve on each applicable executory contract or lease counterparty:  (a) notice that its contract or lease has, as of that date, been determined to be an Assigned Contract; or (b) notice that its contract or lease has, as of that date, been determined to be a Rejected Contract.  Service of such notice shall be made via email to all email addresses available to the Debtors for the counterparty in their files, and via first class mail to all addresses available to the Debtors for the counterparty in their files.  Pursuant to Bankruptcy Code section 365 and without further notice:  (x) the Debtors will be authorized to assume and assign any and all Assigned Contracts listed in clause (a) above as of the Closing Date; and (y) all Rejected Contracts will be deemed rejected as of the Closing Date unless otherwise rejected by the Debtors prior to such date.

27.     Notwithstanding anything to the contrary herein, at any time prior to the Closing Date, the Stalking Horse Bidder or, as applicable, the Successful Bidder, may, by notice to the Debtors, change the designation of any Rejected Contract to be treated as an Assigned Contract, in which case the Debtors shall notify the non-debtor counterparty to such contract or lease the change in designation of such contract or lease along with the proposed cure amount, and such counterparty shall have seven (7) days from receipt of such notification (the "Supplemental Contract Objection Deadline") to file a Supplemental Contract Objection.  Any hearing on a Supplemental Contract Objection will take place on a date scheduled by the Court.  If no Supplemental Contract Objection is received by the Supplemental Contract Objection deadline, such executory contract or lease shall be deemed assumed and assigned as of the Closing Date.  Additionally, by the later of (i) the Closing Date, and (ii) the date of entry of a final order of the Court resolving any Contract Objection, the Stalking Horse Bidder or, as applicable, the Successful Bidder, may designate any executory contract or lease for exclusion from the list of

Assigned Contracts.  As soon as practicable after the Closing Date of any Sale to the Stalking

Horse Bidder or, as applicable, the Successful Bidder, the Debtors shall provide notice of the

assumption and assignment of each Assigned Contract which was assumed and assigned in

connection therewith to each counterparty to such Assigned Contract.

## OVERVIEW OF BIDDING PROCEDURES[4]

28.    To participate in the bidding process and to receive non-public information

concerning the Assets, each interested person or entity (each such party, a "Potential Bidder")

(other than the Stalking Horse Bidders) must deliver (unless previously delivered) to SSG, Five

Tower Bridge, Suite 420, 300 Barr Harbor Drive, West Conshohocken, PA 19428 (Attn:  Teresa

Kohl); and counsel to the Debtors, Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, NY

10001 (Attn:  Paul A. Rubin) (collectively, the "Consulting Parties"), the following on or before

November 13, 2018 (the "Bid Deadline"):

- an executed non-disclosure agreement (an "NDA") reasonably acceptable to the Debtors; and

- preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach), the adequacy of which the Consulting Parties will determine.

29.    In order to be deemed a "Qualified Bid" and for a Potential Bidder (other than the

Stalking Horse Bidder) to be deemed a "Qualified Bidder", each offer, solicitation or proposal (a

"Bid") from a Potential Bidder (other than the Stalking Horse Bidder) (each a "Potential Bid")

must be received on or before the Bid Deadline and must:

a.    be in writing;

---

[4] This is a summary of the Bidding Procedures.  To the extent that anything in this section is inconsistent with the Bidding Procedures, the Bidding Procedures will control.

b.      constitute a good faith, bona fide offer to purchase all of the Assets;

c.      be accompanied by a clean and a duly executed copy of the APA and the documents set forth as schedules and exhibits thereto, along with copies that are marked to reflect the amendments and modifications from the APA prepared by the Debtors prior to the Auction, which may not be materially more burdensome to the Debtors or inconsistent with these Bidding Procedures;

d.      identify with particularity the assets that constitute the Assets;

e.      identify with particularity the liabilities that are to be assumed;

f.      identify with particularity each and every condition to closing;

g.      identify with particularity the executory contracts and unexpired leases for which assumption and assignment is required;

h.      identify with particularity those employees who will be hired by the Qualified Bidder at closing;

i.      not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, and/or (iii) regulatory contingencies of any kind;

j.      remain irrevocable until entry of the Sale Order or such longer period of time as set forth below if the Qualified Bidder is selected as the Back-Up Bidder (as defined below);

k.      provide for a covenant to close within five (5) business days after the entry of the Sale Order;

l.      fully disclose the identity of each entity that will be bidding for or purchasing the Assets and assuming all of the liabilities covered by the bid or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the Qualified Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties;

m.      be accompanied, on or before the Bid Deadline, by a cash deposit in an amount equal to the greater of 10% of the purchase price, by wire transfer of immediately available funds to an account or accounts designated by the Debtors (the "Good Faith Deposit");

n.      state that the offering party or parties consents to the jurisdiction of the Court; and

o.  not request or entitle the Qualified Bidder to any break-up fee, expense reimbursement, termination or similar type of fee or payment and shall include an acknowledgment and representation of the Qualified Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or the APA.

30.  After the Debtors, through the Independent Director (in consultation with the Debtors' professionals), and SSG have determined that a Potential Bid satisfies each of the conditions set forth above, the Debtors or SSG shall notify promptly the Potential Bidder who submitted such Qualified Bid that it has been selected as a Qualified Bidder; *provided*, *however*, that the Debtors reserve the right, after consultation with SSG and its professionals, to reject any Potential Bid if the Debtors, through the Independent Director, determine that such Potential Bid is inadequate or insufficient or the Debtors, through the Independent Director, determines that such Potential Bid is not in conformity with the requirements of the Bankruptcy Code or any related rules or is otherwise contrary to the best interests of the Debtors and their estates.  Any bid that is not deemed by the Debtors to be a "Qualified Bid" shall not be considered by the Debtors.

31.  If one or more Qualified Bids for the Assets is received by the Bid Deadline, then the Debtors shall conduct an Auction.

32.  Upon the conclusion of the Auction (if an Auction is conducted), the Debtors, through the Independent Director, in the exercise of his reasonable, good-faith business judgment, and after consulting with the Debtors' advisors and the advisors to the Consulting

Parties, shall identify (i) the Successful Bid and the Successful Bidder, and (ii) the Back-Up Bid and the Back-Up Bidder.

33.      If no Qualified Bid is received for the Assets, the Auction will not occur and the Stalking Horse Bidder will be deemed the Successful Bidder immediately upon the expiration of the Bid Deadline.

34.      Finally, the remainder of the Bidding Procedures relating to qualified bids, auction procedures, and other logistical requirements are standard terms that are consistent with and similar to procedures used in many cases before this Court, and are compliant with the Sale Guidelines.

## BASIS FOR RELIEF REQUESTED

35.      Pursuant to this Motion, the Debtors seek approval of separate Orders following two separate hearings—the Bidding Procedures Order (which will be considered at the hearing to consider the Bidding Procedures), and the Sale Order (which will be considered at the Sale Hearing).

## I.    THE BIDDING PROCEDURES ORDER SHOULD BE APPROVED

36.      The Bidding Procedures Order, which includes, *inter alia*, the Bidding Procedures, the Assumption Procedures, and the Notice Procedures, should be approved by the Court as a reasonable exercise of the Debtors' business judgment, and necessary and appropriate for the facilitation of an orderly sale process.

### A.    *The Bidding Procedures are Reasonable and Appropriate*

37.      The Bidding Procedures are reasonable, appropriate, tailored to generate the highest and best offers at the Auction for the Assets, and consistent with other bidding procedures routinely approved by courts in this District.  The Bidding Procedures are designed to facilitate organized, competitive bidding so as to maximize the value of the Assets.  The Bidding

Procedures contemplate an open auction process with minimum barriers to entry, and they provide potential bidders with sufficient time to craft their bids and perform due diligence. Further, the Bidding Procedures comply with section 363(k) of the Bankruptcy Code.

> C.      *Assumption and Assignment Procedures*

38.      The assumption and assignment of executory contracts and unexpired leases in accordance with the Assumption Procedures should be approved.  The Assumption Procedures are consistent with the requirements set forth in section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, and they ensure that all of the counterparties to potentially-assumed executory contracts will receive notice and a chance to object.  Further, the Assumption Procedures are consistent with Section I.C.4 of the Sale Guidelines, which requires that any existing defaults will be cured, that adequate assurance of future performance will be provided, and that additional notice and opportunity for a hearing will be provided if the Stalking Horse Bidder is not the Successful Bidder.

39.      As part of Assumption Procedures, the Debtors request that any counterparty that fails to object to the proposed assumption and assignment of any Assigned Contract be deemed to consent to the assumption and assignment thereof, notwithstanding any anti-assignment provision or other restriction.   The provision is necessary in order to ensure an orderly conclusion to the sale process.  *See, e.g., Hargrave v. Tp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that by failing to object, lienholder implicitly consented to sale free of the property free and clear of its lien); *BAC Home Loans Servicing LP v. Grassi (In re Grassi)*, Nos. EP11-010, 08-21085(JBH), 2011 WL 6096509 at *5 (B.A.P. 1st Cir. Nov. 21, 2011) ("This Panel, as well [as] other courts in this circuit and nationally, views

silence as implied consent sufficient to satisfy the consent requirement for approving a sale under § 363(f)(2).").

**D.** *Notice Procedures*

40.     The Debtors submit that the form and manner of the Sale Notice and the Assumption and Assignment Notice should be approved.

41.     The Debtors have satisfied the requirement of Bankruptcy Rule 2002(a) to provide twenty-one (21) days' notice of the Sale Hearing.  Further, Section II.B.2 of the Sale Guidelines permit the Debtors to request a hearing on the Bidding Procedures Order on less than 21 days' notice.  Within three (3) calendar days of entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice on the parties required to be served pursuant to Section II.C.1 of the Sale Guidelines.  The Debtors submit that notice of the Motion and related hearing on the Bidding Procedures Order, coupled with service of the Sale Notice as provided for herein, constitutes good and adequate notice of the Sale and related proceedings pursuant to Fed. R. Bankr. P. 2002, Local Bankruptcy Rule 2002-1, and the Sale Guidelines.  Accordingly, the Debtors request that the Court approve the form and manner of the Sale Notice.

42.     Pursuant to Section II.C.3, n.9 of the Sale Guidelines, the Debtors may provide "notice of proposed cure amounts and the right and deadline to object thereto and otherwise object to the proposed assumption and assignment, or rejection of executory contracts and unexpired leases" in a "separate schedule sent only the parties to such agreements."  As soon as practicable after entry of the Bidding Procedures Order, the Debtors will file and serve the Assumption and Assignment Notice on all non-debtor counterparties to executory contracts or leases in accordance with the Assumption Procedures.  The Assumption and Assignment Notice will provide counterparties with notice of the assumption of their contracts, as well as any cure

amount associated with such assumption. The notice provided by the Assumption and Assignment Notice is in addition to the notice that will be provided by the Sale Notice (which non-debtor counterparties to executory contracts or leases will also receive). The Debtors submit that the Assumption and Assignment Notice satisfies any applicable requirement under section 365 of the Bankruptcy Code and the Sale Guidelines. Accordingly, the Debtors request that the Court approve the form and manner of the Assumption and Assignment Notice.

## II.    THE SALE AND SALE ORDERS SHOULD BE APPROVED

43.    The Sale satisfies all of the requirements of section 363 of the Bankruptcy Code and related case law, and the Sale and the Sale Orders should be approved by the Court as a reasonable exercise of the Debtors' business judgment, acting through the Independent Director.

### A.    *The Sale is an Exercise of Sound Business Judgment*

44.    Pursuant to section 363(b)(1) of the Bankruptcy Code, the debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "Although not specified by section 363, the Second Circuit requires that transactions under section 363 be based on the sound business judgment of the debtor or trustee." *In re MF Global, Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) (citing *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)). "Generally, where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *MF Global*, 467 B.R. at 730 (citing *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)). "If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate; the burden of rebutting that presumption falls to parties opposing the transaction." *MF Global*, 467 B.R. at 730. "Once a court determines that a sound

business justification exists, the court must determine whether (i) the debtor has provided all interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith." *Id.* at 730.

**(i)     The Sale is for a Sound Business Purpose**

45.     "The overriding consideration for approval of a section 363 sale is whether a good business reason has been articulated." *In re GSC Group, Inc.*, 453 B.R. 132, 173 (Bankr. S.D.N.Y. 2011).  In determining whether the debtor has articulated a good business reason for the sale, the Second Circuit has set forth a nonexclusive list of factors to consider, including (i) the proportionate value of the asset to the estate as a whole, (ii) the amount of elapsed time since the filing, (iii) the likelihood that a plan of reorganization will be proposed and confirmed in the near future, (iv) the effect of the proposed disposition on future plans of reorganization, (v) the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, (vi) which of the alternatives of use, sale or lease the proposal envisions, and (vii) whether the asset is increasing or decreasing in value.  *Lionel*, 722 F.2d at 1071.  Additional factors include whether the estate has the liquidity to survive until confirmation of a plan; whether the sale opportunity will still exist as of the time of plan confirmation, and if not, how likely it is that there will be a satisfactory alternative sale opportunity, or a standalone plan alternative that is equally desirable (or better) for creditors; and whether there is a material risk that by deferring the sale, "the patient will die on the operating table." *Boston Generating*, 440 B.R. 302, 322 (Bankr. S.D.N.Y. 2010) (citing *In re Gen. Motors Corp.*, 407 B.R. 463, 490 (Bankr. S.D.N.Y. 2009)).

46.     In this regard, the debtor's decision-making is reviewed through the lens of the business judgment rule, which is a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action

taken was in the best interests of the company."  *Id.* at 174; *see also In re Boston Generating, LLC*, 440 B.R. at 330 ("The business judgment rules entails (1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion of waste of corporate assets.").

47.    Here, the Debtors have a sound business reason for selling the Assets.   The Debtors, through the Independent Director, after a thorough review of the Debtors' business and operations, and in consultation with the Debtors' professionals, has determined that, without an available refinancing alternative, the best way to maximize value for creditors is to sell substantially all of the Debtors' assets.   The Debtors, acting through the Independent Director, have made the decision to sell the Assets after consultation with their advisors, including counsel and SSG.   All parties involved agree that the Sale in the proposed timeline will maximize value to creditors.   Based on the Debtors' 13-week cash budget, the Debtors currently will not be able to continue to operate past the tenth week of these Chapter 11 Cases.   Further, SSG shall have conducted a thorough and extensive marketing process for the Assets.   Accordingly, the Debtors have shown a sound business purpose for the Sale that should be upheld by the Court after applying the business judgment rule.

### (ii)    The Debtors Have Provided All Interested Parties With Adequate and Reasonable Notice of the Sale

48.    The Debtors and SSG have implemented procedures to ensure that adequate and reasonable notice of the Sale will be provided to all interested parties.   As set forth above, the Sale Notice (a) will be served in a manner that provides twenty-one (21) days' notice of the Sale Hearing, (b) informs all interested parties of the Sale Objection Deadline, and (c) shall include all other pertinent information to parties interested in or affected by the Sale in accordance with the Sale Guidelines and Bankruptcy Rules 2002 and 6004.

### (iii)    The Sale Price is Fair and Reasonable

49.    The price that the Debtors receive for the Assets will be fair and reasonable because the sale process was fair and reasonable.   "[T]he true test of value is the sale process itself."  *In re Chrysler LLC*, 405 B.R. 84, 95 (Bankr. S.D.N.Y. 2009), *aff'd*, 576 F.3d 108 (2d Cir. 2009).  The purchase price will be fair because of the process that preceded it.

50.    The Debtors will have spent over a year soliciting potential buyers for the Assets. Moreover, with the assistance of SSG through the Auction, the Debtors will be further exposing the Assets to the entire universe of potential purchasers, and as shown above, SSG will have thoroughly marketed the Assets and the Sale.

### (iv)    The Purchaser is Proceeding in Good Faith

51.    The Stalking Horse Bidder, or other Successful Bidder, is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code.   "A good faith purchaser is one who purchases the assets for value, in good faith and without notice of adverse claims."  *GSC*, 453 B.R. at 180 (citing *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 385 (2d Cir. 1997)).  "A purchaser's good faith is shown by the integrity of his conduct during the course of the sale proceedings.  *Id.* at 180 (internal quotations omitted).  "The absence of good faith is shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *Id.* at 180 (internal quotations omitted).

52.    Here, the Stalking Horse Bidder or Successful Bidder will not have not engaged in any fraud or collusion, and will not attempt to take grossly unfair advantage of the other bidders.  As shown above, the Sale process in this case will be open and transparent for all parties involved, and the Stalking Horse Bidder or Successful Bidder is presumed to have acted in good faith.

**B.**     ***The Sale Should be Approved Free and Clear of All Liens, Claims, Interests,
and Encumbrances Pursuant to Section 363(f) of the Bankruptcy Code***

53.     Pursuant to section 363(f) of the Bankruptcy Code, the debtor may sell estate

property free and clear of any interests in that property if one of the following conditions is met:

"(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents; (3) such interest is a lien and the price at which such property is to be

sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona

fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a

money satisfaction of such interest."  11 U.S.C. § 363(f).

54.     In this case, the Assets are subject to the liens of the Debtors' prepetition secured

lenders, FIKA Acquisitions and the U.S. Small Business Administration (the "<u>SBA</u>").   The

Debtors expect that FIKA Acquisitions and SBA will consent to the Sale.   In any event, all

lienholders will receive notice of the Sale and their respective liens shall attach to the proceeds of

such sale.

**C.**     ***The Debtor Should be Permitted to Assume
and Assign Executory Contracts and Unexpired Leases***

55.     Section 365 of the Bankruptcy Code permits a trustee or chapter 11 debtor-in-

possession, with court approval, to assume or reject any executory contract or unexpired lease of

the debtor.   "Assumption is in effect a decision to continue performance.   It requires the debtor to

cure most defaults and continues the parties' rights to future performance under the contract or

lease."  *COR Route 5 Company, LLC v. Penn Traffic Company (In re Penn Traffic Company)*,

524 F.3d 373, 378 (2d Cir. 2008).   Further, section 365(f) permits the debtor to assign an

assumed contract or lease subject to certain requirements set forth in section 365(f)(2).

### (i)    Assumption and Assignment of the Assigned Contracts is a Sound Exercise of the Debtors' Business Judgment

56.     In the Second Circuit, a motion to assume an executory contract is a summary proceeding, where courts efficiently review a "debtor's decision to adhere to a particular contract in the course of the swift administration of the bankruptcy estate." *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).  In conducting such a review, bankruptcy courts give deference to the debtor's business judgment. *In re MF Global Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012) ("Courts generally will not second-guess a debtor's business judgment concerning whether the assumption or rejection of an executory contract or unexpired lease would benefit the debtor's estate.").

57.     In the instant case, the Assigned Contracts are executory contracts or unexpired leases that will be assumed by the Debtors in connection with the Sale.  These will be contracts that the Successful Bidder has decided are advantageous to the Debtors' business, and therefore, assuming the Assigned Contracts is a sound exercise of the Debtors' business judgment.

### (ii)    Defaults will be Cured

58.     Upon finding that a debtor has properly exercised its business judgment in deciding to assume a contract, the court must then determine whether the debtor has satisfied the requirements of section 365(b) of the Bankruptcy Code.  That section provides that the debtor cannot assume an executory contract until it cures, or provides adequate assurance that it will cure, any default; compensates parties for pecuniary loss arising from the default; and provides adequate assurance of future performance thereunder.  11 U.S.C. § 365(b)(1).

59.     Here, the cure requirements will be satisfied because the Successful Bidder must pay all cure costs under the APA.

### (iii)    Adequate Assurance of Future Performance

60.    Finally, the Debtors submit that at the time of the Sale, "adequate assurance of future performance" will have been provided to all of the counterparties under the Assigned Contracts as required by sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  The Debtors, in consultation with their professionals, have determined that the Stalking Horse Bidder has the financial wherewithal to perform under the Assigned Contracts.  Further, as required by the Bidding Procedures, the Debtors will evaluate the financial wherewithal of potential bidders prior to designating such party a Qualified Bidder (as defined in the Bidding Procedures). Moreover, the Debtors will provide all contract and lease counterparties with notice of the proposed assumption and assignment, and the counterparties will have adequate time and opportunity to object to the assumption, the proposed cure amount, and whether the Debtors have shown adequate assurance of future performance.

## III.    WAIVER OF THE STAY UNDER RULE 6004(H)

61.    Rule 6004(h) provides, in relevant part, that "[a]n order authorizing the … sale … of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  11 U.S.C. § 6004(h).  The purpose of Rule 6004(h) is to provide sufficient time for an objection party to appeal before an order can be implemented.  *See* Collier on Bankruptcy ¶6004.11 at 6004-26 (Alan N. Resnick & Henry J. Sommer ed. 16th ed. 2015). Although Rule 6004(h) and the Advisory Committee Note are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day period, the leading treatise on bankruptcy suggests that the stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  *Id.* at 6004-22.  The treatise further provides that if an objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek such a stay.  *See id.*

62.     The Debtors seek a waiver of the stay under Rule 6004(h) in connection with the entry of the Bidding Procedures and the Sale Order.   The Debtors submit that, under the circumstances, ample cause exists to justify the waive of the 14-day stay imposed by Rule 6004(h).   The Debtors have funds from pre-petition cash and from post-petition revenues to operate in bankruptcy only through the first 10 weeks of these cases.  Any delay in the Debtors' ability to sell the Assets would be detrimental to the Debtors, their estates, and creditors.

## NOTICE

63.     The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee, (b) the creditors listed on the Debtors' list of creditors holding the 30 largest unsecured claims on a consolidated basis, (c) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in any of the assets offered for sale, (d) parties to executory contracts and unexpired leases proposed to be assumed and assigned, (e) the Internal Revenue Service, (f) all parties required to be provided notice under the APA, and (g) all parties that have filed notices of appearance in the Debtors' bankruptcy cases.

WHEREFORE, the Debtors respectfully request that the Court grant the relief sought herein and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
          September 26, 2018

RUBIN LLC

By:    /s/ Paul A. Rubin
          Paul A. Rubin
          Hanh V. Huynh

345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

**EXHIBIT A**
**(APA – TO BE FILED)**

**EXHIBIT B**
**(BIDDING PROCEDURES ORDER)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :

In re:                                :     Chapter 11
                                          :

PACHANGA, INC., *et al.*,[1]        :     Case No.:  18-12767 (MEW)
                                          :     (Jointly Administered)
                 Debtors.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ORDER APPROVING (a) BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (b) PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (c) FORM AND MANNER OF NOTICE OF SALE HEARING

Upon the portion of the motion (the "Motion")[2] of Pachanga, Inc. and its affiliated

debtors and debtors in possession (collectively, the "Debtors"), for entry of an order approving

and authorizing a) bidding procedures in connection with the sale of substantially all of the

Debtors' assets, (b) procedures for assumption and assignment of executory contracts, and (c) the

form and manner of notice of the hearing to approve the sale, pursuant to sections 105(a), 363

and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and

6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2002-1,

6004-1, 6006-1, and 9006-1(b) of the Local Bankruptcy Rules for the Southern District of New

York (the "Local Bankruptcy Rules") and the Amended Guidelines for the Conduct of Asset

Sales established and adopted by the United States Bankruptcy Court for the Southern District of

New York pursuant to General Order M-383 (the "Sale Guidelines"); and this Court having

jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that the

---

[1] The Debtors in these chapter 11 cases are: Pachanga, Inc.; Corossol FIKA Tower LLC; Corossol LLC; Corossol Tribeca LLC; FIKA 41 W 58th Street LLC; FIKA 66 Pearl Street LLC; FIKA 141 W 41st Street LLC; FIKA 157 7th Avenue; FIKA 824 10th Ave LLC; FIKA Catering LLC; FIKA Espresso Bars LLC; FIKA Tribeca LLC; FIKA Web Orders LLC; and MILA Solutions LLC.  The Debtors corporate headquarters and mailing address is 824 10th Avenue, New York, NY 10019.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion (other than the term "Order," which shall refer to this document).

Motion is a core proceeding pursuant to 28 U.S.C. §§ 1408 and 1409; and a hearing having been held on October 16, 2018 (the "Hearing"); and this Court having reviewed the Motion and exhibits thereto and the arguments of counsel made and the evidence proffered or adduced, as applicable, at the Hearing; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest; and this Court having found that the form and manner of notice of the Hearing was good, sufficient, and appropriate under the circumstances and that no other or further notice need be provided or is necessary; and after due deliberation and sufficient cause appearing therefor, this Court FINDS AND DETERMINES THAT:

A.     Bidding Procedures.  The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures annexed hereto as **Exhibit 1** (the "Bidding Procedures"), which are fair, reasonable and appropriate under the circumstances and designed to maximize recovery on, and realize the value of, the Assets.[3]

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Motion is granted to the extent set forth herein, and the Bidding Procedures are approved in their entirety.

2.     The Sale Hearing will be held on [  ], 2018, at [  ] (EST), before the Honorable Michael E. Wiles, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004.  Any obligations of the Debtors as set forth in the APA that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the APA are authorized as set forth

---

[3] The Purchased Assets shall not include the "Excluded Assets" set forth on Exhibit 3 hereto.

herein and are fully enforceable as of the date of entry of this Order.  The Sale Hearing may be adjourned by this Court or the Debtors from time to time by notice of adjournment on the docket in these cases.  If the Sale Hearing is adjourned, the Sale Objection Deadline shall be extended to a date that is two (2) days prior to the rescheduled Sale Hearing.

3.       Except for objections regarding the conduct of the Auction, which may be raised orally at the Sale Hearing, the Sale Objection Deadline shall be [  ] at 4:00 p.m. (EST), subject to this date being extended by virtue of adjournment of the Sale Hearing as set forth in paragraph 2 above.  Objections, if any, must (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules; (iii) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (iv) be filed with this Court and served so as to be actually received no later than the Sale Objection Deadline by the following parties (the "Objection Notice Parties"):

Counsel for the Debtors:  Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, NY 10001 (Attn.:  Paul A. Rubin)

The U.S. Trustee:  Office of the United States Trustee, 201 Varick Street, Room 1006, New York, NY 10014 (Attn.: Serene Nakano)

Counsel for the Stalking Horse Bidder:  Cozen O'Conner, 277 Park Avenue, New York, NY 10172 (Attn.: Erik Schmidt)

***The failure to timely object in accordance with this Order shall forever bar the assertion of any objection to the Motion, entry of the Sale Order and/or consummation of the Sale, including the assumption and assignment of contracts and leases to the Successful Bidder pursuant to the APA or other APA negotiated with the Successful Bidder at the Auction, and shall be deemed to constitute such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.***

4.      The following dates and deadlines regarding competitive bidding are established (subject to modification as needed):

a.      The Bid Deadline shall be at 9:00 a.m. (EST) on [   ], 2018.

b.      The Auction shall take place at 11:00 a.m. (EST) on [   ], 2018, at the offices of [   ].

5.      The Bidding Procedures, substantially in the form annexed hereto as **Exhibit 1** and incorporated by reference as though fully set forth herein, are hereby approved to the extent set forth herein.  The Bidding Procedures shall govern the submission, receipt and analysis of all bids relating to the proposed Sale, and any party desiring to submit a higher or better offer for the Assets shall do so strictly in accordance with the terms of the Bidding Procedures and this Order. In the event of any inconsistency between the Bidding Procedures or the APA and this Order, the terms of this Order shall control.

6.      If one or more Qualified Bids are timely received from a Qualified Bidder(s) in accordance with the Bidding Procedures, the Debtors shall conduct the Auction as set forth herein.

7.      As set forth in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder or if no Qualified Bidder other than the Stalking Horse Bidder indicates its intent to participate in the Auction, the Debtors will not hold the Auction, the Stalking Horse Bidder will be named the Successful Bidder, and the Debtors will seek approval of the APA with the Stalking Horse Bidder at the Sale Hearing.

8.      If the Auction is conducted, each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding

process or the Sale.  The Auction will be conducted openly and shall be transcribed or videotaped.

9.    The Assumption and Assignment Notice, substantially in the form annexed hereto as **<u>Exhibit 2</u>**, is hereby approved.  As soon as practicable, the Debtors shall serve an Assumption and Assignment Notice by first class mail on all non-debtor counterparties to executory contracts or unexpired leases.  The Assumption and Assignment Notice will identify the Stalking Horse Bidder, and inform each recipient that the Debtors have agreed to sell the Assets to the Stalking Horse Bidder pursuant to the APA, and that, as part of the Sale, the counterparty's respective executory contract or lease may be either (i) assumed and assigned or (ii) rejected.

10.    The Sale Notice, substantially in the form annexed hereto as **<u>Exhibit 3</u>**, is hereby approved.  Within three (3) calendar days of entry of this Order, the Debtors shall cause the Sale Notice to be served upon the following parties: (i) all known creditors of the Debtors, (ii) any parties who have expressed a written interest in the Assets, (iii) any parties who are known or reasonably believed to have asserted any lien, claim, interest, or encumbrance in the Assets, (iv) all affected federal, state, and local regulatory and taxing authorities, and (v) all parties to executory contracts and unexpired leases to be assumed and assigned as part of the Sale.

11.    The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

12.    This Court shall retain jurisdiction with respect to any matters, claims, rights, or disputes arising from, based upon, or related to this Order.

Dated: New York, New York
      October _____, 2018

 

_____
UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1
# (Bidding Procedures)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re:                                  :    Chapter 11
                                        :
PACHANGA, INC., *et al.*,[1]            :    Case No.:  18-12767 (MEW)
                                        :    (Jointly Administered)
                        Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BIDDING PROCEDURES FOR THE SUBMISSION,
RECEIPT AND ANALYSIS OF BIDS IN CONNECTION WITH THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

These Bidding Procedures ("Bidding Procedures") have been approved by the United States Bankruptcy Court for the Southern District of New York (the "Court") in connection with the above-captioned cases of Pachanga, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), pursuant to the *Order Approving (A) Bidding Procedures in Connection with Sale of Substantially All of the Debtors' Assets, (B) Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Form and Manner of Notice of Sale Hearing* entered by the Court on [  ] (the "Bidding Procedures Order").

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct the sale (the "Sale") by auction (the "Auction") of substantially all of their assets (the "Assets") pursuant to an asset purchase agreement (the "APA") with FIKA Acquisitions LLC (the "Stalking Horse Bidder").

> Copies of the Bidding Procedures Order, APA or other documents related thereto are available upon request to the Debtors' counsel by submitting a request to the following person:  Hanh Huynh, Esq., Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, NY 10001, hhuynh@rubinlawllc.com.

**A.      Assets to be Sold**

These Bidding Procedures set forth the terms by which prospective bidders, if any, may qualify for and participate in the Auction, thereby competing to make the highest or otherwise best offer for the Assets, as identified in greater detail and defined in the APA.  The assets to be sold are substantially all of the assets of the Debtors.  The Assets will be sold free and clear of all liens, claims, interests, and encumbrances, other than permitted encumbrances.

---

[1] The Debtors in these chapter 11 cases are: Pachanga, Inc.; Corossol FIKA Tower LLC; Corossol LLC; Corossol Tribeca LLC; FIKA 41 W 58th Street LLC; FIKA 66 Pearl Street LLC; FIKA 141 W 41st Street LLC; FIKA 157 7th Avenue; FIKA 824 10th Ave LLC; FIKA Catering LLC; FIKA Espresso Bars LLC; FIKA Tribeca LLC; FIKA Web Orders LLC; and MILA Solutions LLC.  The Debtors corporate headquarters and mailing address is 824 10th Avenue, New York, NY 10019.

**B.      Participation Requirements**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a party interested in purchasing the Assets (a "Potential Bidder") must deliver to the Debtors and SSG (the "Consulting Parties") at the contact information set forth in Section F below, the following documents (the "Preliminary Bid Documents"):

a.      an executed non-disclosure agreement (an "NDA") reasonably acceptable to the Debtors; and

b.      preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach), the adequacy of which the Consulting Parties will determine.

The Consulting Parties will not share any Preliminary Bid Documents with other Potential Bidders or the Stalking Horse Bidder.

The Debtors, in consultation with the Consulting Parties, shall determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may conduct a due diligence review with respect to the Debtors.    Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, a "Qualified Bidder") may submit bids to purchase the Assets.

**D.      Obtaining Due Diligence Access**

After receipt of an executed NDA and notification of Qualified Bidder status, the Debtors shall provide each Qualified Bidder reasonable due diligence information, as requested, including without limitation access to the Debtors' electronic data room, as soon as reasonably practicable after such request.    The Debtors may, at their discretion, provide such due diligence information to any party who has executed an NDA and who is working in good faith to become a Qualified Bidder.    If the Debtors give any information to any Qualified Bidder that is not already in the data room, the Debtors may, at their discretion, promptly post such information to the data room.

The Consulting Parties shall be provided access to the Debtors' electronic data room, and any copies of teasers and/or executive summaries provided to interested parties.

In connection with the provision of due diligence information to Qualified Bidders, the Debtors shall not furnish any confidential information relating to the Debtors, the Assets, or the Sale to any person except a Qualified Bidder or such Qualified Bidder's duly-authorized representatives to the extent provided in the applicable NDA.

The Debtors along with their advisors shall coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders; provided, however, the Debtors, in consultation with the Consulting Parties, may decline to provide such information to

2

Qualified Bidders (i) to the extent such information may negatively impact the Debtors in the conduct of their business, and (ii) who, in the Debtors' reasonable business judgment, in consultation with the Consulting Parties, have not established that such Qualified Bidders intend in good faith to, or have the capacity to, consummate the purchase of the Assets.  No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline (defined below); provided, however, that the data room shall remain open, and the Debtors shall respond to reasonable requests for information from Qualified Bidders through the Auction.

The Debtors designate SSG Capital Advisors LLC ("SSG") to coordinate all reasonable requests for additional information and due diligence access.  The contact information for SSG is:

| Teresa C. Kohl, SSG Advisors, LLC, Five Tower Bridge, Suite 420, 300 Barr Harbor Drive, West Conshohocken, PA 19428, tkohl@ssgca.com |
| --- |

## E.    Bid Requirements

To participate in the Auction, a Qualified Bidder (other than the Stalking Horse Bidder, if any) must deliver no later than the Bid Deadline to the Debtors, and the Consulting Parties at the addresses set forth in Paragraph F below an irrevocable offer for the Assets that must:

a.    be in writing;

b.    constitute a good faith, bona fide offer to purchase all of the Assets;

c.    be accompanied by a clean and a duly executed copy of the APA and the documents set forth as schedules and exhibits thereto, along with copies that are marked to reflect the amendments and modifications from the APA prepared by the Debtors prior to the Auction, which may not be materially more burdensome to the Debtors or inconsistent with these Bidding Procedures;

d.    identify with particularity the assets that constitute the Assets;

e.    identify with particularity the liabilities that are to be assumed;

f.    identify with particularity each and every condition to closing;

g.    identify with particularity the executory contracts and unexpired leases for which assumption and assignment is required;

h.    identify with particularity those employees who will be hired by the Qualified Bidder at closing;

i.    not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, and/or (iii) regulatory contingencies of any kind;

j.    remain irrevocable until entry of the Sale Order or such longer period of time as set forth below if the Qualified Bidder is selected as the Back-Up Bidder (as defined below);

k.    provide for a covenant to close within five (5) business days after the entry of the Sale Order;

l.    fully disclose the identity of each entity that will be bidding for or purchasing the Assets and assuming all of the liabilities covered by the bid or otherwise participating in connection with such bid, and the complete terms of any such participation, along with sufficient evidence that the Qualified Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties;

m.    be accompanied, on or before the Bid Deadline, by a cash deposit in an amount equal to the greater of 5% of the purchase price or $[    ], by wire transfer of immediately available funds to an account or accounts designated by the Debtors (the "Good Faith Deposit");

n.    state that the offering party or parties consents to the jurisdiction of the Court;

o.    not request or entitle the Qualified Bidder to any break-up fee, expense reimbursement, termination or similar type of fee or payment and shall include an acknowledgment and representation of the Qualified Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or the APA; and

p.    must provide for full payment of the secured claims of the Stalking Horse Bidder; full payment or assumption of the secured claims of the U.S. Small Business Administration; and a cash component equal to or greater than the cash component of Stalking Horse Bid plus the initial bid increment.

Bids that the Debtors and the Consulting Parties determine fulfill all of the preceding requirements shall be deemed to be "Qualified Bids."[2]    As soon as practicable after the Bid Deadline, the Debtors shall notify each Qualified Bidder whether its bid constitutes a Qualified Bid so as to enable such Qualified Bidder to bid at the Auction.    Any bid that is not deemed a

---

[2] The consent of any party to the designation of any bid as Qualified Bid or any bidder as a Qualified Bidder, including without limitation, the Stalking Horse Bid and the Stalking Horse Bidder, shall not waive such party's right to raise any objection to the approval of the Sale to such Qualified Bidder pursuant to such Qualified Bid pursuant to the objection procedures established under the Bidding Procedures Order and these Bidding Procedures.

4

Qualified Bid shall not be considered by the Debtors.  The Stalking Horse Bidder shall be deemed to be a Qualified Bidder.  The Stalking Horse APA submitted by the Stalking Horse Bidder, as modified by the Bidding Procedures Order, and any additional bids timely submitted by the Stalking Horse Bidder (to the extent such bids are generally consistent with the terms of the Stalking Horse APA) shall be deemed Qualified Bids, qualifying the Stalking Horse Bidder to participate in the Auction.

### F.    Bid Deadline

Bids must be received by each of the Debtors and the Consulting Parties at the addresses set forth below, in each case so as to be actually received no later than 9:00 a.m. (prevailing Eastern Time) on November 13, 2018 (the "Bid Deadline").

> Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, NY 10001 (Attn.: Paul Rubin), prubin@rubinlawllc.com

> SSG Advisors LLC, Five Tower Bridge, Suite 420, 300 Barr Harbor Drive, West Conshohocken, PA 19428 (Attn.: Teresa C. Kohl), tkohl@ssgca.com

### H.    Evaluation of Qualified Bids

Prior to the Auction, the Debtors (through the Independent Director), in consultation with the Consulting Parties, shall evaluate Qualified Bids and identify the Qualified Bid or Qualified Bids that in the aggregate is, in the Debtors' judgment, the highest or otherwise best bid (the "Starting Bid").  At the commencement of the Auction, the Debtors shall notify all Qualified Bidders in attendance at the Auction of the Starting Bid.

### I.    No Qualified Bids

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur.  If no Qualified Bids are received by the Bid Deadline, the Stalking Horse APA will be deemed the Successful Bid (as defined herein) and, subject to the terms and condition of the Stalking Horse APA, the Debtors will immediately pursue entry of an order by the Court approving the Stalking Horse APA and authorizing the sale of the Assets and the transfer of the Assumed Liabilities to the Stalking Horse Bidder.

### K.    Auction

If, in addition to the Stalking Horse Bidder, one or more Qualified Bids are received by the Bid Deadline, then the Debtors and the Consulting Parties shall conduct the Auction.  The Auction shall commence at 11:00 a.m. (EST) on November 14, 2018, at the offices of Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, NY 10001, or such later time or other place as the Debtors shall timely notify all Qualified Bidders following consultation with the Consulting Parties.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.      only Qualified Bidders, and their respective legal and financial advisors shall be entitled to bid at the Auction;

b.      the Qualified Bidders shall appear in person or through duly-authorized representatives at the Auction;

c.      only such authorized representatives of each of the Qualified Bidders, the Debtors, their respective advisors, and the advisors to the Consulting Parties shall be permitted to attend the Auction;

d.      bidding at the Auction shall begin at the Starting Bid;

e.      subsequent bids at the Auction, including any bids by the Stalking Horse Bidder, shall be made in minimum increments of $[  ];

f.      each Qualified Bidder will be informed of the terms of the previous bids;

g.      each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale;

h.      each Qualified Bidder will be required to confirm on the record of the Auction that it has sufficient financing and financial wherewithal to consummate the Sale, and the Consulting Parties may require any Qualified Bidder to provide evidence of such financial wherewithal at any time;

i.      absent irregularities in the conduct of the Auction, the Court will not consider bids made after the Auction is closed; and

j.      the Auction shall be governed by such other Auction Procedures as may be announced by the Debtors, after consultation with their advisors and the Consulting Parties, from time to time at the Auction; provided that any such other Auction Procedures shall not be inconsistent with any order of the Court.

## L.      Acceptance of the Successful Bid

Upon the conclusion of the Auction (if an Auction is conducted), the Independent Director, in his capacity as independent director of the Debtors, in the exercise of his reasonable, good-faith business judgment, and after consulting with the Debtors' advisors and the Consulting Parties, shall identify the highest or otherwise best bid (the "Successful Bid"). The Qualified Bidder (including the Stalking Horse Bid, if an Auction is not conducted) having submitted the Successful Bid will be deemed the "Successful Bidder." The Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such

6

Successful Bid was made.  The Successful Bidder must also deliver an additional deposit of 5% of the purchase price in addition to the Good Faith Deposit.

The Debtors will present the results of the Auction to the Court at the Sale Hearing (as defined below).  At the Sale Hearing, the Debtors will seek certain findings from the Court regarding the Sale and Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid was a Qualified Bid (as defined in these Bidding Procedures), and (d) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for all of the Assets and is in the best interests of the Debtors.

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (a) such bid is declared a Successful Bid at the Auction and (b) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Court of the Successful Bid and the entry of an Order approving the Successful Bid.

**M.    Sale Hearing**

A hearing to consider approval of the Sale of all of the Assets to the Successful Bidder (or to approve the Stalking Horse APA if no Auction is held) (the "Sale Hearing") is scheduled to take place on [   ], 2018, at [   ], prevailing Eastern Time, or as soon thereafter as counsel may be heard, before the Honorable Michael E. Wiles, United States Bankruptcy Judge, at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004.

The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing.  Except as provided otherwise in the Bidding Procedures Order, no further notice of any such continuance will be required to be provided to any party.

At the Sale Hearing, the Debtors shall present the Successful Bid to the Court for approval.

**N.    Designation of Back-Up Bidder**

Following the approval of the Sale of all of the Assets to the Successful Bidder at the Sale Hearing, if a Successful Bidder fails to consummate an approved Sale within five (5) business days after entry of the Sale Order, the Debtors shall be authorized, but not required, to deem the next highest or otherwise best Qualified Bid for the Assets (the "Back-Up Bid," and the party submitting the Back-Up Bid, the "Back-Up Bidder"), as disclosed at the Sale Hearing, and the Debtors, in consultation with the Consulting Parties shall be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Court.  The Back-Up Bid shall remain open until the first business day following the consummation of a Sale of the relevant assets to the Successful Bidder.

**O.      Return of Good Faith Deposit**

The Good Faith Deposit, if any, of the Successful Bidder shall, upon consummation of the Sale, be credited to the purchase price under the Successful Bid.  If a Successful Bidder fails to consummate the Sale due to a breach by the Successful Bidder, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within fifteen (15) days after the entry of the Sale Order by the Bankruptcy Court or upon the permanent withdrawal of the proposed Sale of any of the Assets included in such unsuccessful Qualified Bid.

**P.      Reservation of Rights**

The Debtors reserve  their rights, following consultation with their advisors and the advisors to the Consulting Parties and with the consent of the Stalking Horse Bidder (whose consent shall not be unreasonably withheld), to modify these Bidding Procedures in any manner that will best promote the goals of the bidding process and to impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Assets, including, without limitation, modifying the requirements for a Qualified Bid, extending the deadlines set forth in these Bidding Procedures, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, canceling the Auction, and rejecting any or all Qualified Bids (excluding, for the avoidance of doubt, the Stalking Horse Bidder's offer pursuant to the Stalking Horse APA) if, in the Debtors' business judgment, following consultation with their advisors and the Consulting Parties, the Debtors determine that such Qualified Bid is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or any related rules or the terms set forth herein, or (c) contrary to the best interests of the Debtors; provided, that if the Debtors cancel the Auction, or reject all Qualified Bids other than the bid of the Stalking Horse Bidder, the Debtors shall promptly pursue entry of an order by the Court authorizing consummation of the Sale of all of the Assets to the Stalking Horse Bidder.  In the event that a Consulting Party or other insider or affiliate of the Debtors participates in this auction process as a Qualified Bidder, such party will be treated like and given no greater or better rights than any other Qualified Bidder.

Notwithstanding the foregoing, if the Debtors, in consultation with the Consulting Parties, materially amend the Bidding Procedures or the Auction Procedures before the Auction, it shall provide notice of such changes within two (2) calendar days thereof to (i) the Objection Notice Parties, and (ii) all Acceptable Bidders (or Qualified Bidders if such change occurs after the Bid Deadline).  If the changes amend any provision regarding the potential assumption of any executory contract or unexpired lease, the Debtors shall also provide notice of such change to the Contract Notice Parties.  Any objection to such a change shall be made by the Sale Objection Deadline or at the Sale Hearing, if notice of the change is made on or after the Sale Objection Deadline.

# Exhibit 2
# (Assumption and Assignment Notice)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re:                                  :    Chapter 11
                                        :
PACHANGA, INC., *et al.*,[1]            :    Case No.:  18-18-12767 (MEW)
                                        :    (Jointly Administered)
                    Debtors.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF (I) DEBTORS' INTENT TO (A) ASSUME AND ASSIGN, OR (B) REJECT CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND ASSUMPTION AND ASSIGNMENT; AND (II) CURE AMOUNTS

**PLEASE TAKE NOTICE** that, pursuant to the *Order Approving (A) Bidding Procedures in Connection with Sale of Substantially All of the Debtors' Assets, (B) Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Form and Manner of Notice of Sale Hearing* (the "Bidding Procedures Order"), the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has authorized Pachanga, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") to conduct an auction (the "Auction") to sell certain assets (the "Assets") to the highest and best qualified bidder for the Assets (the "Successful Bidder"). The Auction will take place on [   ], 2018, commencing at 11:00 a.m. (EST) at the offices of Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, NY 10001. A hearing (the "Sale Hearing") will be held on [   ], 2018, at [   ] in the Bankruptcy Court before the Honorable Michael E. Wiles, United States Bankruptcy Judge, at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004 to consider (i) the sale of the Assets to the Successful Bidder free and clear of liens, claims, interests, and encumbrances (except for any assumed liabilities and permitted liens) and (ii) the assumption and assignment of executory contracts and unexpired leases in connection with the sale. At the Sale Hearing, the Debtors will ask the Bankruptcy Court to enter an order (the "Sale Order") approving the sale to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures Order, among other things, authorized procedures for the Debtors to (a) assume and assign to the Successful Bidder or (b) reject, certain executory contracts and unexpired leases (each of which being referred to respectively as the "Assigned Contracts" or the "Rejected Contracts").

**PLEASE TAKE FURTHER NOTICE** that the Debtors have indicated on **Schedule A** attached hereto (the "Cure Schedule") the cure amount that the Debtors believe must be paid to

---

[1] The Debtors in these chapter 11 cases are: Pachanga, Inc.; Corossol FIKA Tower LLC; Corossol LLC; Corossol Tribeca LLC; FIKA 41 W 58th Street LLC; FIKA 66 Pearl Street LLC; FIKA 141 W 41st Street LLC; FIKA 157 7th Avenue; FIKA 824 10th Ave LLC; FIKA Catering LLC; FIKA Espresso Bars LLC; FIKA Tribeca LLC; FIKA Web Orders LLC; and MILA Solutions LLC. The Debtors corporate headquarters and mailing address is 824 10th Avenue, New York, New York 10019.

cure all pre-petition defaults under each Assigned Contract as of September 14, 2018 (in each instance, the "Cure Amount"), as well as to identify on **Schedule A** each Rejected Contract.

PLEASE TAKE FURTHER NOTICE that objections (a "Contract Objection"), if any, to the assumption and assignment of any Assigned Contract, the adequate assurance of future performance of such Assigned Contract, and the Debtors' proposed Cure Amounts, must: (a) be in writing, (b) state with specificity the nature of such objection and alleged cure amount, including applicable and appropriate documentation in support of such alleged cure amount, (c) comply with the Bankruptcy Rules and Local Rules, (d) be filed with the Bankruptcy Court on or before [   ], 2018 at 5:00 p.m. (EST) (the "Cure Objection Deadline"), and (e) be served, so as to be actually received on or before the Cure Objection Deadline, by (i) counsel for the Debtors, (ii) counsel to the Stalking Horse Bidder, and (iii) the Office of the United States Trustee; provide, however, that if an Auction results in a Successful Bidder other than the Stalking Horse Bidder, the Debtors will file a notice identifying such Successful Bidder with the Court and serve such notice upon each party identified in the Cure Schedule, and the deadline for objecting to the assignment of the Assigned Contracts to such Successful Bidder *solely on the basis of adequate assurance of future performance* will be the commencement of the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that unless a Contract Objection is filed and served before the Cure Objection Deadline, *all parties shall be (i) forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect the Assigned Contracts, and the Debtors and the Successful Bidder shall be entitled to rely solely upon the Cure Amount, (ii) with respect to Assigned Contracts, deemed to have consented to the assumption and assignment of the Assigned Contracts, (iii) with respect to Rejected Contracts, deemed to have consented to the rejection of the Rejected Contracts, and such Rejected Contracts shall be deemed to be rejected as of the date of the entry of the Sale Order, and (iii) forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assigned Contract, or that there is any obligation or defense to the assumption and assignment of such Assigned Contracts, in each case, subject to applicable law and except as provided in the last proviso of the preceding paragraph.*

PLEASE TAKE FURTHER NOTICE that hearings with respect to the Contract Objections may be held (i) at the Sale Hearing, or (ii) at such other date as the Bankruptcy Court may designate upon motion by the Successful Bidder and the Debtors. Where a non-debtor counterparty to an Assigned Contract files an objection asserting a cure amount higher than the proposed Cure Amount (the "Disputed Cure Amount"), then (i) to the extent that the parties are able to consensually resolve the Disputed Cure Amount prior to the Sale Hearing, the Debtors shall promptly provide the Successful Bidder notice and opportunity to object to such proposed resolution, or (ii) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then the amount to be paid under section 365 of the Bankruptcy Code with respect to such Disputed Cure Amount will be determined at the Sale Hearing or such other date and time as may be fixed by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Amount listed on **Schedule A** and otherwise do not object to the Debtors' assignment of your lease or contract, you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, the Bidding Procedures and Bidding Procedures Order, as well as all related exhibits, have been electronically filed with the Bankruptcy Court and may be examined and inspected by interested parties by accessing the Bankruptcy Court's website at www.nysb.uscourts.gov.  Note that a PACER password is need to access documents on the Bankruptcy Court's website.  You may also request these documents by contacting Hanh Huynh, 212-390-8272, hhuynh@rubinlawllc.com.  Documents requested will only be delivered by electronic mail.

<u>Schedule A</u>

## ASSUMED CONTRACTS

| Contract or Lease Counterparty | Description of Contract or Lease | Cure Amount |
|---|---|---|
|  |  |  |

## REJECTED CONTRACTS

| Contract or Lease Counterparty | Description of Contract or Lease |
|---|---|
|  |  |

# Exhibit 3
## (Sale Notice)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
PACHANGA, INC., *et al.*,[1]                                :    Case No.:  18-18-12767 (MEW)
                                                            :    (Jointly Administered)
                          Debtors.                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF PUBLIC AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that Pachanga, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") have been authorized to sell substantially all of the their assets free and clear of all liens, claims, interests, and encumbrances to the Successful Bidder (the "Sale") at the auction to be held on [  ], 2018, at 11:00 a.m. (EST) at the offices of Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, NY 10001 (the "Auction").[2]

**PLEASE TAKE FURTHER NOTICE** that, on [  ], the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order") approving the Bidding Procedures in connection with the Auction, which sets forth dates and times related to the Sale.  All interested bidders should carefully read the Bidding Procedures.  To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of its terms and conditions in this Notice, the terms of the Bidding Procedures shall control.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion, the Bidding Procedures and Bidding Procedures Order, as well as all related exhibits, have been electronically filed with the Bankruptcy Court and may be examined and inspected by interested parties by (i) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov.  Note that a PACER password is needed to access documents on the Bankruptcy Court's website.  You may also request these documents by contacting Hanh Huynh, 212-390-8272, hhuynh@rubinlawllc.com.  Documents requested will only be delivered by electronic mail.

**PLEASE TAKE FURTHER NOTICE** that if the Debtors receive Qualified Bids within the requirements and timeframe specified in the Bidding Procedures, then the Debtors will conduct the Auction on [  ], 2018 at 11:00 a.m. (EST), at the offices of Rubin LLC, 345 Seventh Avenue, 21st Floor, New York, NY 10001, or at such other location as the Debtors may designate.

---

[1] The Debtors in these chapter 11 cases are: Pachanga, Inc.; Corossol FIKA Tower LLC; Corossol LLC; Corossol Tribeca LLC; FIKA 41 W 58th Street LLC; FIKA 66 Pearl Street LLC; FIKA 141 W 41st Street LLC; FIKA 157 7th Avenue; FIKA 824 10th Ave LLC; FIKA Catering LLC; FIKA Espresso Bars LLC; FIKA Tribeca LLC; FIKA Web Orders LLC; and MILA Solutions LLC.  The Debtors corporate headquarters and mailing address is 824 10th Avenue, New York, NY 10019.

[2] To the extent not otherwise defined herein, all capitalized terms used herein shall have the meanings ascribed to them in the Bidding Procedures, which are annexed as Exhibit 1 to the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale before the Honorable Michael E. Wiles, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of New York, at One Bowling Green, New York, New York 10004 on [ ], 2018 at [ ] (the "Sale Hearing").

**PLEASE TAKE FURTHER NOTICE** that, except for objections to the conduct of the Auction, which may be raised at the Sale Hearing, objections, if any, to the Sale, together with proof of service, must: (i) conform to the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, (ii) be filed with the Court and served so as to be actually received no later than 4:00 p.m., prevailing Eastern Time, on [ ], 2018 (the "Objection Deadline") by the following parties (the "Notice Parties"):

**Debtors:**

Paul A. Rubin, Esq.
Hanh V. Huynh, Esq.
Rubin LLC
345 Seventh Avenue, 21st Floor
New York, New York 10001
(212) 390-8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

**Stalking Horse Bidder:**

Frederick E. Schmidt, Jr., Esq.
Cozen O'Connor
277 Park Avenue
New York, New York 10172
(212) 883-4948
eschmidt@cozen.com

**Office of the United States Trustee:**

Serene Nakano, Esq.
Trial Attorney
Office of the United States Trustee
201 Varick Street, Room 1006
New York, New York 10014

## CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION

Any party or entity who fails to timely file and serve an objection to the Sale on or before the Objection Deadline in accordance with the Bidding Procedures Order shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of the Assets free and clear of all liens, claims, interests, and encumbrances.

## NO SUCCESSOR OR TRANSFEREE LIABILITY

The proposed Sale Order provides in substance that the Successful Bidder will have no responsibility for, and the Assets will be sold free and clear of, any successor liability, including the following: (i) any liability or other obligation of the Debtors, or related to the Assets, other than as expressly set forth in the APA with respect to assumed liabilities, or (b) any Claims against the Debtors or any of their predecessors or affiliates. Except as expressly provided in the APA with respect to the Successful Bidder, the Successful Bidder shall have no liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective

businesses or operations, or any of the Debtors' (or their predecessors' or affiliates') obligations based, in whole or in part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including but not limited to liabilities on account of any taxes arising, accruing, payable under, out of, in connection with, or in any way relating to the operation of the Assets prior to the Closing.  Except to the extent expressly included in the assumed liabilities with respect to the Successful Bidder, the Successful Bidder shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) or the Comprehensive Environmental Response and Liability Act (42 U.S.C. §§ 9601 et seq.), or any state, foreign, or federal law of similar import, or otherwise by virtue of the Successful Bidder's purchase of the Assets or assumption of assumed liabilities.