**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :

In re:                             :   Chapter 11
                                  :

PACHANGA, INC., *et al.*,[1]        :   Case No.: 18-12767 (MEW)
                                  :   (Jointly Administered)

               Debtors.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

 

## DEBTORS' AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION

R<small>UBIN</small> LLC
Paul A. Rubin
Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel: 212.390.8054
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for the Debtors*

Dated: April 5, 2019

---

[1] The Debtors in these chapter 11 cases are: Pachanga, Inc.; Corossol FIKA Tower LLC; Corossol LLC; Corossol Tribeca LLC; FIKA 41 W 58th Street LLC; FIKA 66 Pearl Street LLC; FIKA 141 W 41st Street LLC; FIKA 157 7th Avenue; FIKA 824 10th Ave LLC; FIKA Catering LLC; FIKA Espresso Bars LLC; FIKA Tribeca LLC; FIKA Web Orders LLC; MILA Solutions LLC; FIKA 10 Park Avenue LLC; FIKA 52 Duane Street LLC; FIKA 555 6th Avenue LLC; FIKA 600 Lexington LLC; FIKA 1331 Lexington LLC; and FIKA Columbus Circle LLC. The Debtors' corporate headquarters and mailing address is 824 10th Avenue, New York, NY 10019.

# INTRODUCTION

Pachanga, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors") hereby propose this *Amended Joint Chapter 11 Plan of Liquidations* (the "Plan") pursuant to sections 1121(a), 1122 and 1123 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restriction set forth in Section 12 of the Plan, the Debtors expressly reserve the right to alter, amend, supplement or modify the Plan, one or more times, before its substantial consummation.

## SECTION 1. DEFINITIONS

Unless the context otherwise requires, (i) the following terms shall have the following meanings when used in the Plan; (ii) any capitalized term that is used in the Plan and not defined in this Section I but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section and exhibit references in the Plan are to the respective section of, or exhibit to, the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as stated otherwise in the Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1     "Administrative Claims Bar Date" shall mean the first Business Day that is 14 days after the Effective Date.

1.2     "Administrative Expense Claim" shall mean any Claim for payment of costs and expenses of administration pursuant to sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Debtors' Estates and operating the businesses of the Debtors; (b) compensation for Professional Fees; (c) all fees and charges assessed against the Estates pursuant to 28 U.S.C. § 1930; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

1.3     "Administrative Tax Claim" shall mean an Administrative Expense Claim for a tax due to a governmental unit.

1.4     "<u>Allowed Claim</u>" shall mean a Claim or any portion thereof against a Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent.

1.5     "<u>Allowed Interest</u>" shall mean an Interest in a Debtor that has not been disallowed and is not a disputed Interest with respect to which (i) a Proof of Interest has been timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent.

1.6     "<u>APA</u>" shall mean that certain Asset Purchase Agreement between FA and the Debtors dated as of October 8, 2018, together with all exhibits and schedules thereto.

1.7     "<u>Assets</u>" shall mean all assets of the Debtors of any nature whatsoever, including, without limitation, all property of the Debtors' Estates pursuant to section 541 of the Bankruptcy Code, Cash, Avoidance Actions (excluding Avoidance Actions purchase by FA pursuant to the APA), Causes of Action, equipment, inventory, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of any of the foregoing.

1.8     "<u>Assumed Liabilities</u>" shall mean those liabilities assumed by FA pursuant to the APA.

1.9     "<u>Available Cash</u>" shall mean the sum of cash remaining in the Debtors' Estates.

1.10     "<u>Avoidance Actions</u>" shall mean claims or causes of action arising under sections 502, 510, 541, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including, without limitation, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or the Uniform Voidable Transfer Act (including any similar laws of each of the foregoing enacted by any state, commonwealth or territory of the United States), and any law of similar effect, whether or not litigation is commenced to prosecute such claims or causes of action.

1.11     "<u>Bankruptcy Code</u>" shall mean title 11 of the United States Code, as now in effect or hereafter applicable to these Chapter 11 Cases.

1.12     "<u>Bankruptcy Court</u>" shall mean the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases.

1.13     "<u>Bankruptcy Rules</u>" shall mean the Federal Rules of Bankruptcy Procedure, as amended, and the local rules of the Bankruptcy Court, as applicable to these Chapter 11 Cases.

1.14     "<u>Business Day</u>" shall mean any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close in New York, New York.

1.15     "<u>Cash</u>" shall mean cash and cash equivalents including, without limitation, checks and wire transfers.

1.16    "Cause of Action" means any claim (other than the Claims against the Debtors), cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and/or franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Cause of Action also includes without limitation: (a) any right of setoff, counterclaim, or recoupment and/or any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Avoidance Action.

1.17    "Chapter 11 Cases" shall mean the Debtors' chapter 11 cases pending in the Bankruptcy Court and jointly administered under case number 18-12767 (MEW).

1.18    "Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.19    "Class" shall mean a category of substantially similar Allowed Claims or Allowed Interests as established pursuant to Section 3 of the Plan.

1.20    "Confirmation Date" shall mean the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order.

1.21    "Confirmation Order" shall mean an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.22    "Creditor" shall mean a Holder of a Claim.

1.23    "Debtors" shall mean, collectively, Pachanga, Inc., Corossol FIKA Tower LLC, Corossol LLC, Corossol Tribeca LLC, FIKA 41 W 58th Street LLC, FIKA 66 Pearl Street LLC, FIKA 141 W 41st Street LLC, FIKA 157 7th Avenue, FIKA 824 10th Ave LLC, FIKA Catering LLC, FIKA Espresso Bars LLC, FIKA Tribeca LLC, FIKA Web Orders LLC, MILA Solutions LLC, FIKA 10 Park Avenue LLC, FIKA 52 Duane Street LLC, FIKA 555 6th Avenue LLC, FIKA 600 Lexington LLC, FIKA 1331 Lexington LLC, and FIKA Columbus Circle LLC.

1.24    "Deficiency Claim" shall mean, to the extent the value of any property securing a Claim is less than the amount of such Claim, the difference between such value and such Claim.

1.25    "Disbursing Agent" shall mean Rubin LLC, solely in its capacity as disbursing agent under the Plan.

1.26    "Disclosure Statement" shall mean the Disclosure Statement for the Debtors' Amended Joint Chapter 11 Plan of Liquidation dated April [  ], 2019, as the same may be altered, modified, or amended.

1.27     "Disputed Claim" shall mean a Claim that has neither been Allowed nor disallowed pursuant to a Final Order of the Bankruptcy Court, and (A) if no Proof of Claim has been filed by the applicable deadline, and as to which the Debtors have not consented to allowance: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors, or any other party in interest, has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; or (B) if a Proof of Claim or other request for payment has been filed by the applicable deadline, and as to which the Debtors have not consented to allowance: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules or Allowed under the Plan; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of such Claim as listed on the Schedules to the extent of such positive variance; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors, or any other party in interest which has not been withdrawn or determined by a Final Order.

1.28     "Distribution" shall mean Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under the Plan.

1.29     "Effective Date" shall mean the first Business Day after the Confirmation Date on which the conditions precedent specified in Section 10 of the Plan have been either satisfied or waived.

1.30     "Estate" shall mean the estate created in each Debtor's Chapter 11 Case containing all Assets of the Debtor pursuant to section 541 of the Bankruptcy Code.

1.31     "Executory Contract" shall mean a contract to which one or more of the Debtors is a party that is capable of assumption or rejection under section 365 of the Bankruptcy Code.

1.32     "FA" shall mean FIKA Acquisitions LLC.

1.33     "FA Deficiency Claim" shall mean the Allowed Deficiency Claim of FA in the amount of $1,483,846.00.

1.34     "FA Secured Claim" shall mean the Allowed Secured Claim in the aggregate amount of $12,599,450.00 as of the Petition Date against the Debtors held by FA in the Chapter 11 Cases under that certain Assignment and Assumption Agreement dated July 31, 2018 between FA and Apfel Holdings LLC, pursuant to which Apfel Holdings LLC assigned all of its pre-Petition Date secured claims against the Debtors to FA, and certain promissory notes evidencing pre-Petition Date secured loans from FA to the Debtors, the validity of which claims were stipulated to by the Debtors in the *Final Order (I) Authorizing Debtors' Use of Cash Collateral, and (II) Providing Adequate Protection Thereof* [ECF No. 71] entered by the Bankruptcy Court on November 16, 2018.

1.35     "Final Order" shall mean means an order or judgment of a court entered by the clerk of the court on the docket of a case, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or

rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however, that a motion under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed relating to such order shall not cause such order to not be a Final Order.

1.36     "General Unsecured Claim" shall mean any Claim asserted against any Debtor which is not included within the other specifically defined Classes hereunder or which is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

1.37     "Holder" shall mean a Person holding a Claim or Interest.

1.38     "Impaired" shall mean with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.39     "Interest" shall mean an equity interest in one or more of the Debtors.

1.40     "NYSDTF" shall  mean the New York State Department of Taxation and Finance.

1.41     "NYSDTF Sales Tax Claims" shall mean the Claims of the NYSDTF for pre-Petition Date sales taxes owed by the Debtors to the NYSDTF to the extent such sales taxes are (i) entitled to priority treatment under section 507(a) of the Bankruptcy Code, and (ii) set forth on the Schedules.  To the extent that the amount of the aggregate NYSDTF Sales Tax Claims is greater than the aggregate amount of such claims as set forth on the Schedules, the difference shall constitute a "Priority Tax Claim."

1.42     "Person" shall mean a person as defined in 11 U.S.C. § 101(41).

1.43     "Petition Date" shall mean, as applicable, (i) September 14, 2018 with respect to Pachanga, Inc., Corossol FIKA Tower LLC, Corossol LLC, Corossol Tribeca LLC, FIKA 41 W 58th Street LLC, FIKA 66 Pearl Street LLC, FIKA 141 W 41st Street LLC, FIKA 157 7th Avenue, FIKA 824 10th Ave LLC, FIKA Catering LLC, FIKA Espresso Bars LLC, FIKA Tribeca LLC, FIKA Web Orders LLC, and MILA Solutions LLC; and (ii) October 4, 2018 with respect to FIKA 10 Park Avenue LLC, FIKA 52 Duane Street LLC, FIKA 555 6th Avenue LLC, FIKA 600 Lexington LLC, FIKA 1331 Lexington LLC, and FIKA Columbus Circle LLC.

1.44     "Plan" shall have the meaning set forth in the Introduction.

1.45     "Priority Non-Tax Claim" shall mean that portion of an Allowed Claim, other than a Priority Tax Claim, an Administrative Expense Claim, an Administrative Tax Claim, a Professional Fees Claim, a Secured Claim, or Statutory Fees, entitled to priority in payment section 507(a) or (b) of the Bankruptcy Code.

1.46 "Priority Tax Claim" shall mean an Allowed Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.47 "Professionals" shall mean all professionals employed by the Debtors under sections 105, 327 or 330 of the Bankruptcy Code to render professional services in the Chapter 11 Cases pursuant to a Final Order.

1.48 "Professional Fees" shall mean compensation for services rendered, and reimbursement of expenses incurred, by Professionals prior to the Effective Date, as allowed and awarded by Final Order following application, in accordance with sections 330 and 331 of the Bankruptcy Code.

1.49 "Proof of Claim" shall mean a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.50 "Proof of Interest" shall mean a proof of an Interest filed against any of the Debtors in the Chapter 11 Cases.

1.51 "Pro Rata" shall mean the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.52 "Purchased Assets" shall mean those assets purchased by FA in connection with the Sale, as set forth in the APA and approved by the Sale Order.

1.53 "Remaining Cash" shall mean the Cash, if any, after the payment of all Allowed Administrative Expense Claims, Statutory Fees, Allowed Administrative Tax Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Professional Fee Claims, and all fees and expenses incurred in connection with the administration and implementation of the Plan.

1.54 "Sale" shall mean the sale of substantially all of the Debtors' Assets to FA pursuant to the APA, as approved by the Sale Order.

1.55 "Sale Order" shall mean the *Order (A) Approving the Asset Purchase Agreement Between the Debtors and FIKA Acquisitions, LLC, (B) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* [ECF No. 74] entered by the Bankruptcy Court on November 19, 2018.

1.56 "SBA" shall mean the U.S. Small Business Administration.

1.57 "SBA Secured Claim" shall mean the Allowed Secured Claim against the Debtors held by the SBA in the Chapter 11 Cases under that certain Loan Authorization and Agreement dated November 30, 2012 between the SBA and Debtor Pachanga, Inc.

1.58 "Schedules" shall mean collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed

by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

1.59    "Secured Claim" shall mean any Claim of a Creditor that is secured by property of the Estates, to the extent of the value of the Creditor's interest in the Estate's interest in such property, as provided in section 506(a) of the Bankruptcy Code.  Secured Claim also means a Claim of a Creditor that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff, as provided in section 506(a) of the Bankruptcy Code.  To the extent the value of any property securing such Claim is less than the amount of such Claim, the difference between such value and such Claim is a "Deficiency Claim" unless the holder of such Claim validly elects under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.60    "Statutory Fees" shall mean means all fees and charges assessed against the Debtors or the Estates under 28 U.S.C. § 1930 and any interest thereon pursuant to 31 U.S.C. § 3717.

1.61    "Unexpired Lease" shall mean a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.62    "Unimpaired" shall mean with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

## SECTION 2.  STATUTORY FEES, ADMINISTRATIVE EXPENSE CLAIMS, AND PRIORITY CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims or Allowed Priority Tax Claims.  Such Claims, to the extent Allowed, shall receive the treatment provided in this Section 2 in full and final satisfaction, release and discharge thereof.

2.1    *Statutory Fees*.  Any Statutory Fees assessed against the Debtors or their estates owed to the Office of the Unites States Trustee shall be paid in full by the Effective Date. Thereafter, Statutory Fees will be paid as they become due until entry of a final decree or the Chapter 11 Cases are converted or dismissed.

2.2    *Administrative Expense Claims*.

(a)    *Treatment*.  Subject to the provisions of Section 8 of the Plan with respect to Disputed Claims, each Administrative Expense Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (a) the Effective Date, (b) the date payment of such Claim is due under the terms thereof or applicable law, or (c) three business days after such Claim becomes an Allowed Administrative Claim, or (ii) as may be otherwise agreed in writing between the Debtors and the Holder of such Claim; *provided, however,* that any Administrative Expense Claim incurred by the Debtors in the ordinary course of their business shall be paid in full in accordance with the terms and conditions of the  particular transaction giving rise to such Administrative Expense Claim and any agreements relating thereto.

(b)     ***Administrative Claims Bar Date***.  Except as otherwise provided in Sections 2.2, 2.3 and 2.4 of the Plan, requests for payment of Administrative Expense Claims must be filed no later than the Administrative Claims Bar Date.  Holders of Administrative Expense Claims that do not file requests for the payment of Administrative Expense Claims on or before the Administrative Claims Bar Date shall be forever barred from asserting such Claims against the Debtors or their Estates.

2.3     ***Professional Fee Claims***.  Each Person seeking an award by the Bankruptcy Court of Professional Fees shall file its final application for approval of its Professional Fees no later than the Administrative Claims Bar Date.  Each Holder of an Allowed Claim for Professional Fees shall receive from the Disbursing Agent, in full and final satisfaction of such Allowed Claim, Cash in the amount of such Allowed Claim within three days of the entry of a Final Order allowing such Claim.

2.4     ***Administrative Tax Claims***.  Subject to the provisions of Section 8 of the Plan with respect to Disputed Claims, all Administrative Tax Claims held by governmental units shall be paid, in Cash, in full either (i) on the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtors and such governmental unit.

2.5     ***NYSDTF Sales Tax Claims***.  Pursuant to the terms of the APA, FA assumed all liabilities and obligations of the Debtors for the NYSDTF Sales Tax Claims.  FA's assumption of the NYSDTF Sales Tax Claims shall be in full and final satisfaction, release and discharge of the NYSDTF Sales Tax Claims as against the Debtors.  To the extent that the amount of the aggregate NYSDTF Sales Tax Claims is greater than the aggregate amount of such claims as set forth on the Schedules, the difference shall constitute a "Priority Tax Claim," and the portion that constitutes a Priority Tax Claim shall be treated in accordance with Section 2.6 of the Plan.

2.6     ***Priority Tax Claims***.  Subject to the provisions of Section 8 of the Plan with respect to Disputed Claims, in full and final satisfaction, release and discharge of Priority Tax Claims, each Holder of a Priority Tax Claim shall receive, on the Effective Date, or as soon as practicable after each such Claim becomes an Allowed Claim, payment from the Disbursing Agent, (i) in Cash, in the full amount of its Priority Tax Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor the Holder of such Priority Tax Claim.

## SECTION 3.  CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in Section 2, Allowed Claims and Allowed Interests are classified as set forth in this Section 3.  A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.  In addition, the Debtors have not classified any Claims they may have against any other Debtor.  Subject to all other applicable provisions of the Plan (including its Distribution provisions), classified Claims shall receive the treatment described in Section 4 herein.  The Plan will not provide any Distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, or otherwise satisfied or paid as of the Effective Date, including, without limitation, payments by third parties.

3.1    ***Class 1 – Priority Non-Tax Claims***.  Class 1 consists of all Priority Non-Tax Claims.

3.2    ***Class 2 – FA Secured Claim***.  Class 2 consists of the FA Secured Claim.

3.3    ***Class 3 – SBA Secured Claim***.  Class 3 consists of the SBA Secured Claim.

3.4    ***Class 4 – General Unsecured Claims***.  Class 4 consists of all General Unsecured Claims, including Deficiency Claims, against the Debtors.

3.5    ***Class 5 – Interests***.  Class 5 consists of all Interests in the Debtors.

### SECTION 4.  TREATMENT OF CLAIMS AND INTERESTS

4.1    ***Class 1 – Priority Non-Tax Claims***.  The Plan will not alter any of the legal, equitable and contractual rights of the Holders of Allowed Priority Non-Tax Claims.  Subject to the provisions of Section 8 of the Plan with respect to  Disputed Claims, in full and final satisfaction, release and discharge of the Class 1 Priority Non-Tax Claims, each Holder of a Priority Non-Tax Claim shall receive, on the Effective Date, or as soon as practicable after each such Claim becomes an Allowed Claim, payment from the Disbursing Agent, (i) in Cash, in the full amount of its Priority Non-Tax Claim, or (ii) as may be otherwise agreed in writing between the Debtors and the Holder of such Priority Non-Tax Claim.

4.2    ***Class 2 – FA Secured Claim***.  On November 30, 2018, the Debtors, on the one hand, and FA on the other hand, consummated the Sale in accordance with the APA and the Sale Order.  Pursuant to the APA, the Debtors transferred the Purchased Assets to FA in consideration of the purchase price paid by FA comprised of (i) a credit bid of a portion of the FA Secured Claim equal to $11,115,604.00, (ii) Cash in the amount of $325,000.00, and (iii) the assumption by FA of the Assumed Liabilities.  FA received at the closing of the Sale, in full and final satisfaction, release and discharge of the Class 2 FA Secured Claim, the Purchased Assets, free and clear of all liens, Claims, encumbrances, and interests.  FA will not receive any Distribution under the Plan on account of the FA Secured Claim or the FA Deficiency Claim.

4.3    ***Class 3 – SBA Secured Claim***.  Pursuant to the terms of the APA, FA assumed all liabilities and obligations of the Debtors for the SBA Secured Claim.  FA's assumption of the SBA Secured Claim shall be in full and final satisfaction, release and discharge of the Class 3 SBA Secured Claim as against the Debtors.  Accordingly, the SBA will not receive any Distribution under the Plan on account of the SBA Secured Claim.

4.4    ***Class 4 – General Unsecured Claims***.  Subject to the provisions of Section 8 of the Plan with respect to Disputed Claims, in full and final satisfaction, settlement, release and discharge of the Class 4 General Unsecured Claims, each Holder of an Allowed General Unsecured Claim against any of the Debtors will receive its Pro Rata share of the Remaining Cash from the Disbursing Agent as soon as practicable following Distributions made on account of all Allowed Administrative Expense Claims, Statutory Fees, Allowed Administrative Tax Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Professional Fee Claims, and all fees and expenses incurred in connection with the administration and implementation of the Plan; *provided, however,* that each Holder of an Allowed General Unsecured Claim against more than

one Debtor shall be entitled to a single Distribution on account of each Claim that arises out of the same facts and circumstances regardless of the number of Debtors against which the Claim is asserted.

      4.5    ***Class 5 – Interests***.  This Class consists of any Holders of Interests in the Debtors, which will be cancelled as of the Effective Date.

## SECTION 5.  ACCEPTANCE OR REJECTION OF THE PLAN

      5.1    ***Holders of Claims and Interests Entitled to Vote***.  The Allowed Claims in Classes 2, 3 and 4 are Impaired, and the Holders of such Claims are entitled to vote to accept or reject the Plan.

      5.2    ***Classes Deemed to Reject***.  The Allowed Interests in Class 5 are not receiving any Distribution and the Holders of such Interests are deemed to reject the Plan.

      5.3    ***Class Deemed to Accept***.  Allowed Claims in Class 1 is Unimpaired and the Holders of such Claims are not entitled to vote to accept or reject the Plan.

      5.4    ***Cramdown Under Section 1129(b) of the Bankruptcy Code***.  If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtors will request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code on the bases that the Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted or is deemed to reject, the Plan.

## SECTION 6.  MEANS FOR IMPLEMENTATION

      6.1    ***Deemed Consolidation***.  The Plan includes, and is implemented by, the deemed consolidation of the Debtors' Estates solely for the purposes of voting and Distributions.  Except as expressly provided in the Plan, on the Effective Date: (i) all Assets (and all proceeds thereof) and liabilities of the Debtors shall be deemed merged or treated as though they were merged into and with the Assets and liabilities of each other, (ii) no Distributions shall be made under the Plan on account of intercompany Claims among the Debtors and all such Claims shall be eliminated and extinguished, (iii) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (iv) each and every Claim filed or to be filed in any of the Chapter 11 Cases shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors, and (v) for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors.  Such deemed consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structures of the reorganized Debtors.  Notwithstanding anything in this section to the contrary, all post-Effective Date Statutory Fees, if any, shall be calculated on a separate legal entity basis for each Debtor.

6.2 **Plan Funding**. The Plan shall be funded by the Available Cash on the Effective Date.

6.3 **Dissolution of Corporate Existence**. After the Chapter 11 Cases have been closed, the Debtors shall be deemed dissolved and shall have no continuing corporate existence, subject only to the Debtors' Plan-imposed obligation to satisfy the Allowed Claims against the Debtors' Estates in accordance with the treatment provided under the Plan. To the extent permitted by law, the dissolution of the Debtors shall not abate or suspend a proceeding commenced by the dissolving Debtors by reason of the dissolution, and the Debtors shall nevertheless be deemed a continued corporate body as necessary for the sole purpose of winding up their affairs, including the prosecution of any proceedings. Upon the final payment and satisfaction of the last of such Plan-imposed obligations, the Debtors (A) shall be dissolved and withdraw their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such dissolution and withdrawal; (B) shall be deemed to have all of their Interests cancelled pursuant to the Plan; and (C) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes that otherwise would have accrued on or after the Effective Date, all without the necessity for any other or further actions to be taken on behalf of such Debtors; *provided, however*, that the Debtors may, if they so elect, and any officer of the Debtors shall be an authorized signatory for such purposes, prepare and file all corporate resolutions, statements, notices, tax returns, or certificates of dissolution, and prosecute any actions pursuant to the Plan.

## SECTION 7. DISTRIBUTIONS

7.1 **Rights and Powers of the Disbursing Agent**. Debtors' bankruptcy counsel, the law firm of Rubin LLC, will be the Disbursing Agent and will distribute all Cash or other property to be distributed under the Plan. The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan; (b) make all Distributions contemplated hereby; (c) file post-confirmation quarterly reports, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

7.2 **Delivery of Distributions in General**. Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be made to Holders of record as of the Effective Date by the Disbursing Agent. Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims and Allowed Interests shall be made: (a) at the addresses set forth on the respective Proofs of Claim filed by such Holders; (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent before the Effective Date; or (c) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address. None of the Debtors or the Disbursing Agent shall incur any liability whatsoever on account of any Distributions under the Plan except for gross negligence, willful misconduct or fraud.

7.3 **Payments and Distributions on Disputed Claims**. Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date

but which later become Allowed Claims shall be deemed to have been made on the Effective Date. Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

7.4 ***Manner of Payment***. Any Distributions to be made by the Disbursing Agent pursuant to the Plan shall be made by checks drawn on accounts maintained by Disbursing Agent.

7.5 ***Undeliverable Distributions and Unclaimed Property***. In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such Distribution shall be made as soon as practicable after such Distribution has become deliverable; *provided, however*, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of ninety (90) days from the date of the attempted Distribution. After such date, all "unclaimed property" or interests in property shall revert to the Debtors (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any Holder to such property shall be discharged and forever barred.

7.6 ***Setoffs***. The Debtors may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which a Distribution shall be made), any claims of any nature whatsoever that the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against the Holder of such Claim.

7.7 ***Claims Paid or Payable by Third Parties***. The Debtors and the Disbursing Agent shall be authorized to reduce in full or in part, as applicable, a Claim, and such Claim shall be disallowed without a Claim objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor. No Distributions under this Plan shall be made on account of an Allowed Claim that is payable pursuant to the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agree to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court. Except as otherwise provided in this Plan, Distributions to Holders of Allowed Claims shall be made in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any entity may hold against any other entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

7.8     *No Post-Petition Date Interest*.  Unless otherwise specifically provided for herein or in the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on such Claim.

7.9     *Fractional Dollars; De Minimis Distributions*.    Notwithstanding any other provision of the Plan, Cash payments of fractions of dollars shall not be made.  Whenever any Distribution to a Holder of a Claim would otherwise call for Distribution of Cash in a fractional dollar amount, the actual Distribution of such Cash shall be rounded to the nearest whole dollar (up or down), with half dollars (or less) being rounded down.  The Disbursing Agent shall not be required to make any Distribution, whether final or not, unless and until the total amount of such Distribution to a specific Holder of an Allowed Claim is equal to or greater than fifty dollars ($50.00), unless a request is made in writing to the Disbursing Agent for such payment on or before thirty (30) days after the Effective Date.

## SECTION 8.  PROCEDURES FOR DISPUTED CLAIMS

8.1     *Allowance of Claims and Interests*.  Except as expressly provided herein, or in any order entered in the Debtors' Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or Allowed by the Bankruptcy Court by entry of a Final Order allowing such Claim or Interest.

8.2     *Objections to Claims*.  The Debtors shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under the Plan.  Any objections to Claims shall be filed and served on or before the later of (i) forty-five (45) days after the Effective Date or (ii) such date as may be fixed by the Bankruptcy Court.

8.3     *Claims Listed as Contingent, Unliquidated, or Disputed in Schedules*.  **ANY CLAIM THAT HAS BEEN LISTED IN THE SCHEDULES AS CONTINGENT, UNLIQUIDATED OR DISPUTED, AND FOR WHICH NO PROOF OF CLAIM HAS BEEN TIMELY FILED IS CONSIDERED DISALLOWED ON THE EFFECTIVE DATE WITHOUT FURTHER ACTION BY THE DEBTORS AND WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

8.4     *Estimation of Claims*.  The Debtors may, at any time, and from time to time, request that the Bankruptcy Court estimate any contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors may pursue supplementary proceedings to object to the allowance of such Claim; provided, however, the Debtors may elect not to pursue such

supplementary proceedings, instead electing to treat such maximum amount as the Allowed amount of such Claim.

8.5 **_No Distribution Pending Allowance_**. Notwithstanding any other provision of the Plan, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.6 **_Distributions After Allowance_**. At such time as a contingent Claim or a Disputed Claim becomes an Allowed Claim, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any contingent Claim or Disputed Claim becomes a Final Order. To the extent that all or a portion of a contingent Claim or a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed.

8.7 **_Disallowed Claims_**. All Claims held by persons or entities against whom or which the Debtors have commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code shall be deemed Disallowed Claims pursuant to section 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject the Plan. Disallowed Claims pursuant to this Section shall continue to be Disallowed Claims for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtors from such party have been paid.

8.8 **_Reserves_**. To the extent not otherwise provided for herein or ordered by the Bankruptcy Court, the Disbursing Agent shall estimate appropriate reserves of cash to be set aside in order to pay or reserve for accrued expenses and for the payment of prospective expenses and liabilities of the estate and the Disbursing Agent after the Effective Date. Without limitation, these reserves shall include funds for Disputed Claims, and the fees and expenses of the Disbursing Agent. Notwithstanding any contrary provision contained herein, the Disbursing shall not be obligated to physically segregate and maintain separate accounts for reserves. Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Disbursing Agent to determine cash available for Distributions, reserves and amounts to be paid to parties-in-interest.

## SECTION 9. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

9.1 **_Deemed Rejection of Executory Contracts and Unexpired Leases_**. Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, including, but not limited to, the APA, each of the Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease (i) was assumed or rejected previously by the Debtors; (ii) expired or terminated pursuant to its own terms before the Effective Date; or (iii) is the subject of a motion to assume or reject filed on or before the Effective Date.

9.2    ***Rejection Claims***.   Except as otherwise provided in orders entered by the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases (including Claims arising from the deemed rejection of Executory Contracts or Unexpired Leases pursuant to Section 9.1 of the Plan), if any, must be filed with the Bankruptcy Court and served on counsel to the Debtors on or before the date that is thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; provided, however, that any such Claims shall be subject to the cap on rejection damages imposed by section 502(b) of the Bankruptcy Code.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion and shall not be enforceable against the Debtors, the Debtors' Estates or their property without the need for any objection by the Debtors or further notice to, or action, order or approval of the Bankruptcy Court. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Debtor and shall be treated in accordance with the Plan.

9.3    ***Reservation of Rights***.  Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder.

## SECTION 10.  CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

10.1    ***Conditions Precedent to Confirmation***.  Confirmation of the Plan shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of the Plan:

(a)    a Final Order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered by the Bankruptcy Court; and

(b)    the entry of the Confirmation Order in form and substance reasonably satisfactory to the Debtors.

10.2    ***Conditions Precedent to Effective Date***.  The Effective date shall not occur, and the Confirmation Order shall not be entered, until each of the following conditions precedent have been satisfied or waived pursuant to the provisions of the Plan:

(a)    confirmation shall have occurred and the Confirmation Order shall have been entered by the Bankruptcy Court;

(b)    the Confirmation Order shall have become a Final Order; and

(c)    there shall not be in effect on the Effective Date any (i) Order entered by a U.S. court, (ii) order, opinion, ruling or other decision entered by any other court or governmental entity, or (iii) United States or other applicable law staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan.

10.3     ***Effect of Failure of Conditions***.  If the conditions listed in Sections 10.1 and 10.2 are not satisfied or waived in accordance with this Section 10, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims by or against or any Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors or any other party, or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtors.

## SECTION 11.  EFFECT OF CONFIRMATION

11.1     ***Immediate Binding Effect***.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or any other Bankruptcy Rule, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Disbursing Agent, any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

11.2     ***Compromise and Settlement of Claims, Interests and Controversies***.  Pursuant to sections 363 and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests and is fair, equitable and reasonable.

11.3     ***Plan Related Releases***.  ***The Debtors, and any of such parties' respective current and/or post-Petition Date and pre-Effective Date affiliates, members, officers, directors, employees, counsel, advisors, or agents, and any of such parties' successors and assigns shall not have or incur, and are hereby released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the negotiation and filing of the Plan, the filing of the Chapter 11 Cases, the settlement of Claims or rejection of Executory Contracts and Unexpired Leases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their fraud, willful misconduct or gross negligence or any obligations that they have under or in connection with the Plan or the transactions contemplated in the Plan, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing herein shall abrogate the enforcement of any applicable professional disciplinary rules.***

11.4 *Exculpation*. *To the extent permitted by section 1125(e) of the Bankruptcy Code The Debtors, the Estates, and the Debtors' officers and directors (and each of their respective successors, predecessors, control persons, members, agents, employees, attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons) shall neither have nor incur any liability to any Person (including any holder of a Claim or Interest) for any prepetition or postpetition act taken or omitted to be taken in connection with or related to the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation or occurrence of the Effective Date of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with, or in contemplation of, restructuring of the Debtors. Notwithstanding the foregoing, such exculpations provided for in this Section 11 of the Plan shall not extend to any damages, losses or claims arising from acts of fraud, gross negligence or willful misconduct, or abrogate the enforcement of any applicable professional disciplinary rules.*

## SECTION 12. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

12.1 *Modification and Amendments*. The Plan or any exhibits thereto may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

12.2 *Effect of Confirmation on Modifications*. Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

12.3 *Revocation or Withdrawal of the Plan*. The Debtors reserve the right to, consistent with their fiduciary duties, revoke or withdraw the Plan before the Effective Date. If the Debtors revoke or withdraw the Plan, or if the Confirmation Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Person; or (iii) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Person.

## SECTION 13. RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, and to the extent permitted by applicable law, the Bankruptcy Court shall retain such jurisdiction over any matter arising under the Bankruptcy Code, or arising in or related to the

Chapter 11 Cases or the Plan after confirmation and after the Effective Date, and any other matter or proceeding that is within the Bankruptcy Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157 including, without limitation, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims;

(b)    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c)    ensure that Distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions hereof;

(d)    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, including all Causes of Action and objections or estimations to Claims or Interests, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by any other entity after the Effective Date; *provided, however*, that the Debtors shall reserve the right to prosecute the Causes of Action in all appropriate jurisdictions;

(e)    enter such orders as may be necessary or appropriate to implement or consummate the provisions hereof and of all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(f)    resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, or any entity's obligations incurred in connection with the Plan;

(g)    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan, except as otherwise provided herein;

(h)    resolve any cases, controversies, suits or disputes with respect to the releases, injunctions and other provisions contained in Section 11 hereof and enter any orders that may be necessary or appropriate to implement such releases, injunctions and other provisions;

(i)    enter and implement any orders that are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(j)    determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

(k)    Resolve any issues that arise in connection with Distributions or rights to Distributions under the Plan; and

(l)     enter an order and/or final decree concluding the Chapter 11 Cases.

## SECTION 14.  MISCELLANEOUS PROVISIONS

14.1     *Payment of Statutory Fees*.  All Statutory Fees shall be paid when due.

14.2     *Post-Confirmation Reports*.  The Disbursing Agent shall file post-confirmation quarterly reports.

14.3     *Substantial Consummation*.  On the Effective Date, the Plan shall be deemed to be substantially consummated within the meaning set forth in section 1101 and pursuant to section 1127(b) of the Bankruptcy Code.

14.4     *Post-Effective Date Fees and Expenses*.  From and after the Effective Date, the Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable and necessary fees and expenses of counsel and/or the Disbursing Agent from the Available Cash.

14.5     *No Admissions*.  If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors, (b) prejudice in any manner the rights of the Debtors or any other party in interest, or (c) constitute an admission of any sort by the Debtors or other party in interest.

14.6     *Successors and Assigns*.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

14.7     *Conflicts*.  To the extent any provision of the Plan or the Disclosure Statement or any document executed in connection therewith or any documents executed in connection with the Plan or Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing) conflicts with, or is in any way inconsistent with, the terms of the Confirmation Order, the terms and provisions of the Confirmation Order shall govern and control. To the extent any provision of the Disclosure Statement or any document executed in connection therewith or any documents executed in connection with the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing) conflicts with, or is in any way inconsistent with, the terms of the Plan, the terms and provisions of the Plan and the Confirmation Order shall govern and control.

14.8     *Governing Law*.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of the Plan and the transactions consummated or to be consummated in connection therewith.

14.9     *Notices*.  All notices, requests, and demands to or upon the Debtors in the Chapter 11 Cases shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered by the following recipients:

Pachanga, Inc.
Attn: Lars Akerlund
824 10th Avenue
New York, NY 10019

   -and-

Rubin LLC
Attn:  Paul A. Rubin & Hanh V. Huynh
345 Seventh Avenue, 21st Floor
New York, NY 10001

  14.10  ***Severability***.  The provisions of the Plan shall not be severable unless such severance would constitute a permissible modification of the Plan pursuant to section 1127 of the Bankruptcy Code.

  14.11  ***Entire Agreement***.  The Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

Dated:  April 5, 2019

       Respectfully submitted,

       Pachanga, Inc.
       Corossol FIKA Tower LLC
       Corossol LLC
       Corossol Tribeca LLC
       FIKA 41 W 58th Street LLC
       FIKA 66 Pearl Street LLC
       FIKA 141 W 41st Street LLC
       FIKA 157 7th Avenue
       FIKA 824 10th Ave LLC
       FIKA Catering LLC
       FIKA Espresso Bars LLC
       FIKA Tribeca LLC
       FIKA Web Orders LLC
       MILA Solutions LLC
       FIKA 10 Park Avenue LLC
       FIKA 52 Duane Street LLC
       FIKA 555 6th Avenue LLC
       FIKA 600 Lexington LLC
       FIKA 1331 Lexington LLC
       FIKA Columbus Circle LLC

       By: */s/ Lars Akerlund*
         Lars Akerlund
         President